## UNITED STATES v. SOUTHERN OREGON CO.

(District Court, D. Oregon. July 12, 1915.)

### No. 3701.

1. PUBLIC LANDS ⚙➜66—GRANTS—CONSTRUCTION.

Condition in the grant by Act Cong. March 3, 1869, c. 150, 15 Stat. 340, of public lands to the state of Oregon in aid of a military road, requiring "that the land shall be sold to any one person only in quantities not greater than one quarter section and for a price not exceeding two dollars and fifty cents per acre," *held* not a condition subsequent, but an enforceable covenant.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 219, 220; Dec. Dig. ⚙➜66.]

2. PUBLIC LANDS ⚙➜66—GRANTS—CONSTRUCTION.

Compliance with such condition was not a mere matter of good faith between the government and the state, Congress having the power to impose such conditions as it desired upon disposing of the public domain, and a grantee to whom the state, by virtue of Act Cong. June 18, 1874, c. 305, 18 Stat. 80 (Comp. St. 1913, § 4871), disposed of its interest is bound to observe the conditions.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 219, 220; Dec. Dig. ⚙➜66.]

3. JUDGMENT ⚙➜713—CONCLUSIVENESS—MATTERS CONCLUDED.

When a second suit is upon the same cause of action and between the same parties, the judgment in the first is conclusive as to every question which was or might have been presented and determined in the second.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1066, 1099, 1234-1237, 1239, 1241, 1247; Dec. Dig. ⚙➜713.]

4. JUDGMENT ⚙➜586—CONCLUSIVENESS—MATTERS CONCLUDED.

Before suing to forfeit an entire grant of land on account of the grantee's failure to comply with conditions of the grant respecting alienation, the federal government brought other suits seeking to cancel the patents to small portions of the land which it was claimed were not included in the patent or were included by mistake. *Held*, that judgments for the

grantees in those actions did not preclude a subsequent suit to forfeit the property.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062–1066, 1098, 1099; Dec. Dig. ⚖=586.]

**5. ESTOPPEL ⚖=62—EQUITABLE ESTOPPEL—LACHES.**

The federal government is not estopped to claim forfeiture of a grant of lands on account of the patentees' failure to comply with the conditions of the grant by reason of having full knowledge that the patentees were treating the property as if it was theirs in fee simple, subject to no conditions, for the grant was by act of Congress which has the same constancy as the law.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 151–153; Dec. Dig. ⚖=62.]

**6. PUBLIC LANDS ⚖=66—INNOCENT PURCHASERS—WHO ARE.**

Where the original grant of public lands from the government contained restrictions on the use of land, the patentee's grantee cannot be a bona fide purchaser without notice, and thus entitled to take the property free from the duty to comply with the burdens.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 219, 220; Dec. Dig. ⚖=66.]

In Equity. Suit by the United States of America against the Southern Oregon Company. Decree for complainant.

See, also, 196 Fed. 423.

This is a suit on the part of the general government to have forfeited to it substantially the entire land grant made by Congress, of March 3, 1869, to the state of Oregon to aid in the construction of a military wagon road from Roseburg, in Douglas county, to Coos Bay, in Coos county. The grant is of the odd-numbered sections to the extent of three sections on each side of the line of the road, with indemnity limits of six miles.

Among the provisions of the first section of the act are these: "Provided, that the lands hereby granted shall be exclusively applied to the construction of said road and to no other purpose, and shall be disposed of only as the work progresses: Provided further, that the grant of lands hereby made shall be upon the condition that the lands shall be sold to any one person only in quantities not greater than one quarter section, and for a price not exceeding two dollars and fifty cents per acre."

Section 2 provides that "The lands hereby granted to said state shall be disposed of by the Legislature thereof for the purpose aforesaid, and for no other."

Section 5 provides that when the Governor of the state shall certify to the Secretary of the Interior that 10 continuous miles of said road are completed, then a quantity of the land granted, not to exceed 30 sections, may be sold, and so on from time to time, until said road shall be completed; completion being required within five years, with a further provision that, if not completed within that time, the lands remaining unsold shall revert to the United States.

Section 6 requires that the Surveyor General shall cause the lands granted "to be surveyed at the earliest practical period after said state shall have enacted the necessary legislation to carry this act into effect." 15 Stat. 340, 341.

On October 22, 1870, the Legislative Assembly of the state of Oregon, by an act thereof, granted to the Coos Bay Wagon Road Company all lands, right of way privileges, and immunities as granted to the state by the act aforesaid, "for the purpose of aiding said company in constructing the road mentioned and described, in said act of Congress, upon the conditions and limitations therein prescribed." Laws 1870, p. 40.

On June 18, 1874, Congress passed a supplemental act, providing for the issuance of patents to the lands granted, to the state of Oregon, on compli-

ance with the terms of the original act, unless the state "shall by public act have transferred its interests in said lands to any corporation or corporations, in which case the patents shall issue from the General Land Office to such corporation or corporations upon their payment of the necessary expenses thereof: Provided, that this shall not be construed to revive any land grant already expired nor to create any new rights of any kind except to provide for issuing patents for lands to which the state is already entitled." 18 Stat. 80, c. 305 (Comp. St. 1913, § 4871).

The road was completed within the time limited, and in due course patents were issued by the general government to the Coos Bay Wagon Road Company. Prior to May 31, 1875, the company sold divers small tracts of the land, aggregating 6,963 acres, and on that date it entered into a contract with one John Miller to sell and convey to him 96,676.96 acres of the granted lands. In pursuance of the contract, the company conveyed to Miller, on the same date, 35,534 acres by deed, and the wagon road by another deed. Subsequently Miller conveyed to Collis P. Huntington, Charles Crocker, Leland Stanford, and Mark Hopkins; and they later, by mesne conveyances, to Wm. H. Besse, who, on December 29, 1883, conveyed to Russell Gray, and he, in turn, on January 5, 1884, conveyed to the Oregon Southern Improvement Company, an Oregon corporation. In further pursuance of the Miller contract, the Road Company, on January 7, 1884, conveyed the remaining 61,143.37 acres to Wm. H. Besse, who, on June 4th following, conveyed to the Oregon Southern Improvement Company. The property was at about the same time conveyed by the Improvement Company by certain trust deeds to secure certain bonds, which deeds were later foreclosed, and the property sold at master's sale and conveyed to the Southern Oregon Company, the defendant, also an Oregon corporation.

Subsequent to May 31, 1875, 4,470 acres of the lands have been sold to individuals, namely, 8 sales by the Road Company, 6 by Crocker, 2 by the Improvement Company, and 14 by the defendant company. Other than these, no lands of the grant have been sold either in large or small tracts.

The testimony in the case indicates that the holders have, almost from the inception of the grant, evinced a purpose not to sell in quantities not exceeding 160 acres to any one person, or for a price not exceeding $2.50 per acre. Indeed, the sales made by the Road Company, the patentee, are in derogation of the terms of the grant as it respects quantity, and the subsequent holders have steadily refused, with rare exceptions, to sell in compliance with the terms of the grant; and the defendant, the present holder, does now refuse so to dispose of the lands, claiming to be the owner of the entire fee-simple interest therein, freed of any obligations whatsoever to the government respecting them.

Clarence L. Reames, U. S. Atty., of Portland, Or., Constantine J. Smyth, Sp. Asst. Atty. Gen., of Omaha, Neb., and Fred. C. Rabb, Sp. Asst. Atty. Gen., of Portland, Or.

Dolph, Mallory, Simon & Gearin, of Portland, Or., for defendant.

WOLVERTON, District Judge (after stating the facts as above). [1] The government is seeking a forfeiture of this grant, on the ground that the clause requiring the land to be sold in quantities not greater than 160 acres to any one person, and for a price not exceeding $2.50 per acre, constitutes a condition subsequent, and that there has been a breach of the condition. The defendant insists that the proviso, alluding to this provision in the grant, is repugnant to the grant, because a limitation on the right of alienation, and therefore void. The position is sought to be substantiated by reason of the alleged fact that the lands could not be sold in 160-acre tracts for any price. The testimony does tend to show that, up to perhaps 15 years ago, there was slack sale for the lands in any quantities. It

cannot be asserted, however, that since that time by far the greater proportion of the granted lands could not have been sold in strict conformity with the provisions of the grant. The defendant company having declined and refused so to dispose of its lands, there has been a positive noncompliance with the letter of the grant.

These contentions, both of the government and of the defendant, have been put to rest, contrary to the views of counsel, by the Supreme Court, in the case of Oregon & California Railroad Co. et al. v. United States, 238 U. S. 393, 35 Sup. Ct. 908, 59 L. Ed. ——, originating in this court and involving the construction of similar provisions contained in grants of like character, in a very able and exhaustive opinion by Mr. Justice McKenna. The contention of the defendant there was in reality slightly different from that made here; it being that the provisos constituted restrictive and unenforceable covenants; but, for all practical purposes, it must be considered the same as here. At least, the reasoning and consideration of the Supreme Court reaches and disposes of both phases of the position advanced. I may be pardoned if I quote extensively from the opinion, for it seems to dispose of every aspect of the contentions stated.

"Congress, therefore," says the court, "had under consideration remedies for violations of the provisions of the act and adjusted them according to what it considered the exigency. As a penalty for not completing the road as prescribed Congress declared only for a reversion of the lands not then patented, for not maintaining it in repair and use Congress reserved the right temporarily to sequester the road, and yet for a violation of the provision for sale to settlers it is urged that Congress condemned to forfeiture, not only the lands then unpatented, but those patented. Mark the difference. Was noncompletion of the road of less consequence than settlement along its line?— not necessarily complete settlement, but any settlement—the refusal, it might be, of the acceptance of a single offer of settlement, or even, as it is contended, of making provision for settlement, being of greater consequence and denounced by more severe penalty than the declared conditions, that is, assent to the act, completion of the road, and its maintenance. This is difficult, if not impossible, to believe.

"It appears, therefore, that the acts of Congress have no such certainty as to establish forfeiture of the grants as their sanction, nor necessity for it to secure the accomplishment of their purposes, either of the construction of the road or sale to actual settlers; and we think the principle must govern that conditions subsequent are not favored, but are always strictly construed, and where there are doubts whether a clause be a covenant or condition, the courts will incline against the latter construction, indeed, always construe clauses in deeds as covenants rather than as conditions, if it is possible to do so. 2 Washburn on Real Property, 4. And this because 'they are clauses of contingency on the happening of which the estates granted may be defeated.' And it is a general principle that a court of equity is reluctant to (some authorities say never will) lend its aid to enforce a forfeiture.

"By this conclusion do we leave the provisos meaningless and the government without remedy for their violation? There is no argument in a negative answer. From the defects of a provision we can deduce nothing, nor on account of them substitute one of greater efficacy.

"But must the answer be in the negative, and by rejecting the contention of the government are we compelled to accept that of the railroad company? or we may say those of the railroad company, for the contentions are many, some of which preclude the application of the provisos, some of which assert their invalidity, and others limit their application.

"If not first in order, at least in more immediate connection with the contention of the government is the contention that the provisos are not conditions subsequent, but simple covenants, and, it is said, restrictive and neg--

ative only, and therefore not enforceable. In support of the contention all of the uncertainties, or asserted uncertainties, of the provisos are marshaled and amplified. * * * And the conclusion is deduced that the actual settlers' clauses, viewed even as covenants, were either impossible of performance, or repugnant to the grants, and therefore void.

"The arraignment seems very formidable, but is it not entirely artificial? It is stipulated that prior to 1887 more than 163,000 acres of the granted lands were sold, nearly all of which were sold to actual settlers in small quantities. If the sale of 163,000 acres of land encountered no obstacle in the enumerated uncertainties, we cannot be impressed with their power to obstruct the sale of the balance of the lands. The demonstration of the example would seem to need no addition. But passing the example, as it may be contended to have some explanation in the character of the lands so disposed of, the deduction from the asserted uncertainties is met and overcome by the provisos and their explicit direction. They are, it is true, cast in language of limitation and prohibition; the sales are to be made only to certain persons, and not exceeding a specified maximum' in quantities and prices. If the language may be said not to impose 'an affirmative obligation to people the country,' it certainly imposes an obligation not to violate the limitations and prohibitions when sales were made, and it is the concession of one of the briefs that the obligation is enforceable, and that, even regarding the covenant as restrictive, the 'jurisdiction of a court of equity, upon a breach or threatened breach of the covenant, to enforce performance by enjoining a violation of the covenant, cannot be doubted.' Apposite cases are cited to sustain the admission, and in answer to the contention of the government that it could recover no damages for the breach, and hence had no enforceable remedy but forfeiture, it is said: 'But the jurisdiction of a court of equity in such cases does not depend upon the showing of damage. Indeed, the very fact that injury is of public character, and such that no damage could be calculated, is an added reason for the intervention of equity.' And cases are adduced. We concur in the reasoning and give it greater breadth in the case at bar than counsel do. They would confine it, or seem to do so, to the compulsion of sales of land susceptible of actual settlement, and assert that the evidence established that not all of the lands, nor indeed the greater part of them, have such susceptibility. But neither the provisos nor the other parts of the granting acts make a distinction between the lands, and we are unable to do so. The language of the grants and of the limitations upon them is general. We cannot attach exceptions to it. The evil of an attempt is manifest. The grants must be taken as they were given. Assent to them was required and made, and we cannot import a different measure of the requirement and the assent than the language of the act expresses. It is to be remembered the acts are laws as well as grants, and must be given the exactness of laws.

"If the provisos were ignorantly adopted, as they are asserted to have been; if the actual conditions were unknown, as is asserted; if but little of the land was arable, most of it covered with timber and valuable only for timber, and not fit for the acquisition of homes; if a great deal of it was nothing but a wilderness of mountain and rock and forest; if its character was given evidence by the application of the Timber and Stone Act [Act June 3, 1878, c. 151, 20 Stat. 89] to the reserved lands; if settlers neither crowded before nor crowded after the railroad, nor could do so; if the grants were not as valuable for sale or credit as they were supposed to have been, and difficulties beset both uses—the remedy was obvious. Granting the obstacles and infirmities, they were but promptings and reasons for an appeal to Congress to relax the law; they were neither cause nor justification for violating it. Besides, we may say that there is controversy about all of the asserted facts and conclusions.

"Our conclusions, then, on the contentions of the government and the railroad company, are that the provisos are not conditions subsequent; that they are covenants, and enforceable."

What is there said is applicable here, and amply disposes of the contentions advanced without further reasoning or comment.

[2] In this connection may be considered the further contention of the defendant that the grant was to the state of Oregon and in præsenti, and that compliance with the proviso was a matter of good faith only between the government and the state. It will be remembered that, by the act of June 18, 1874, Congress recognized the right and power of the state to transfer its interests in said grant to any corporation, or corporations, for it declared that in the event of such a transfer, patents should be issued to the corporation or corporations direct. The Legislative Assembly of the state, in making the transfer, did it "upon the conditions and limitations" prescribed in the grant. The state did not pretend to comply with the proviso, or any condition of the grant. These things the Road Company undertook to perform by its acceptance of the transfer, and was bound to their performance, the same as the state. But it is not conceivable that it was a matter of good faith merely with the state, to perform the covenants of the grant, any more than it was with the Road Company. The lands prior to the grant were a part of the public domain, and Congress was empowered to dispose of them to whom it pleased, and upon such conditions as it might impose. It could deal with a state in that regard, the same as with an individual or a private corporation, and, unless it evinced a different purpose in dealing with the state, there could be no different construction placed upon the grant. The obligation of the state for the observance of identical conditions would be the same as that of an individual or a corporation. The cases of Mills County v. Railroad Companies, 107 U. S. 557, 2 Sup. Ct. 654, 27 L. Ed. 578, and Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569, have no application here. Those cases relate to the grant by the general government of swamp lands to the state on condition that the proceeds of the lands, "whether from sale or direct appropriation in kind," should be applied in reclaiming the lands, and the court held the appropriation of the proceeds rested solely in the good faith of the state. But here is a grant where the state or its grantee is required to dispose of the lands in a certain specified way, which is a direction of law, and nothing is left to the good faith of the state, except to observe the obligations imposed upon it or its grantee by the acceptance of the grant.

[3, 4] It is next contended that the government is estopped to assert a claim for forfeiture, mainly upon the ground that certain suits were in the past instituted, wherein it had the opportunity of setting up the nature of the grant and insisting upon the performance of the provision or covenant in question, and that, having failed to do so, it should not now be heard to insist upon such performance. The nature of the suits may be noticed briefly.

The first was instituted by the United States against the Road Company and the present defendant February 18, 1896, for the purpose of canceling the Road Company's patent to the N. E. ¼ of the N. E. ¼ of section 9, township 28 S., range 7 W., because, it was alleged, the land was reserved by the terms of the grant. A demurrer was interposed to the bill, which was sustained, and the bill dismissed.

On February 29, 1896, the government instituted another suit against the Road Company and the present defendant, and others, for the purpose of annulling the Road Company's patents to certain lands contained in an overlap of the grants to the Road Company and the Oregon & California Railroad Company. To this bill a demurrer was also interposed and sustained, and the bill dismissed, and the cause was not proceeded with further.

On the same day the government instituted another suit against the Road Company, the Southern Oregon Company, Lorenz Vogl, and others, to cancel the patent of the Road Company to a certain tract of land because reserved from the grant, and 1,099.50 other acres of land because situated outside of the limits of the grant, and patented to the Road Company through oversight and mistake of the ministerial officers of the Land Office. The Road Company and the Southern Oregon Company answered the bill, the latter setting up a complete chain by which it claimed to deraign title from the government under the grant, the manner of selecting the lands under the grant, the approval of the lists, and the issuance of the patents in pursuance thereof. It appears further that the government filed a replication to the Road Company's answer. The reply was demurred to, and the demurrer sustained by the court, and, the government refusing to plead further, on motion of the defendants the suit was dismissed. This is a novel procedure, of course, but such is the record, and the cause was thus disposed of.

Later, on August 25, 1897, the government began another suit, against the Road Company alone, touching the same matter, but demanded, as to the lands alleged to be outside of the limits of the grant that were patented to the Road Company, that the government recover the value thereof to the amount of $2.50 per acre. The suit resulted in a cancellation of the patent to the small tract alleged to have been reserved from the operation of the grant, and a decree against the defendant for $1,099.59, the value of the lands patented alleged to be outside of the delimitation of the grant. While the prayer, among other things, prayed for a construction of the grant, there was no construction of it by the court, other than to ascertain: First, that the small tract of land was reserved by the terms of the grant; and, second, that the other lands patented were outside of the limits prescribed, and therefore, they having gone into other hands, that the Road Company should pay to the government what it received therefor.

Upon strict legal principles, it cannot be maintained that any of these suits, or the disposition thereof, or the judgments or decrees rendered, are a bar or an estoppel against the prosecution of the present suit in any of its phases. It has been long settled that, when a second suit is upon the same cause of action and between the same parties, the judgment in the first is conclusive in the second as to every question which was or might have been presented or determined in the first; but when the second suit is upon a different cause of action, though between the same parties, the judgment in the former operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been presented and passed upon. In the latter contingency, the question must further appear upon the

face of the record to have been so litigated, or shown by extrinsic evidence, and it is only when it so appears that the former judgment will operate as an estoppel to the subsequent suit or action. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; Nesbitt v. Riverside Independent District, 144 U. S. 610, 12 Sup. Ct. 746, 36 L. Ed. 562; De Sollar v. Hanscome, 158 U. S. 216, 15 Sup. Ct. 816, 39 L. Ed. 956; Northern Pacific Railway v. Slaght, 205 U. S. 122, 27 Sup. Ct. 442, 51 L. Ed. 738; Delaware, L. & W. R. Co. v. Kutter, 147 Fed. 51, 72 C. C. A. 315.

It cannot be said: First, that this is the same cause of suit as any one of the suits above mentioned; and, second, although in each instance between the same parties, treating the defendant here as successor to the Road Company, that the questions here sought to be litigated and determined, or any of them, were directly litigated and determined there. Nor does the case of United States v. California & Oregon Land Co., 192 U. S. 355, 24 Sup. Ct. 266, 48 L. Ed. 476, help the defendant. The purpose of that case was to have certain patents for land declared void as forfeited, and to establish title in the United States. The suit having failed, it was held to constitute a bar to a subsequent bill brought against the same defendant to recover the same land on the ground that it was excepted from the original grant as being a part of an Indian reservation. In commenting upon the lack of distinction between the two suits, Mr. Justice Holmes said:

"The best that can be said, apart from the act just quoted, to distinguish the two suits, is that now the United States puts forward a new ground for its prayer. Formerly it sought to avoid the patents by way of forfeiture. Now it seeks the same conclusion by a different means; that is to say, by evidence that the lands originally were excepted from the grant. But in this, as in the former suit, it seeks to establish its own title to the fee."

In none of the cases relied upon was it attempted to establish the government's title in any of the lands now in dispute, nor was it attempted in any way to require the defendant to observe the exact provisions of the grant, as is now sought to be done, so that I am clear that there is no estoppel by reason of any judgment or decree rendered in any of those cases.

[5] But it is further urged that the government ought to be estopped by reason of having full knowledge of the manner in which the several parties were treating their holdings of these lands (that is, as though they were the owners in fee simple, with absolute title unincumbered by any provision of law or covenant impairing the validity of their title in any way), and that the government has not, through all these years, at any time insisted upon any breach of any alleged condition subsequent, or of any covenant respecting the grant. A complete answer to this is the one given by the Supreme Court to a like contention, and others of a similar nature, made in the case of United States v. Oregon & California Railroad Company et al., supra, as follows:

"We may observe again that the acts of Congress are laws as well as grants, and have the constancy of laws as well as their command, and are operative and obligatory until repealed. This comment applies to and answers all the other contentions of the railroad company based on waiver, acquiescence, and estoppel and even to the defenses of laches and the statute of limitations."

[6] One other point is presented, and that is that the defendant is an innocent purchaser, in good faith and for value. But this cannot be, so long as the provision about which the entire case hinges is a covenant pertaining to the grant itself. The grant having the force of law,.every purchaser dealing with the grant, as the parties succeeding to the title and rights and privileges of the state have dealt with it, must be charged with full knowledge of all of the provisions of the grant, and cannot therefore claim as innocent purchasers.

The decree in this case will be the same as in the Oregon & California Land Grant Case, namely, that the defendant be enjoined from sales of any of these lands in violation of the covenant, and also from any disposition of them whatever, or of the timber thereon, or from cutting or authorizing to be cut or removed any of the timber thereon,. until Congress shall have a 'reasonable opportunity to provide by legislation for their disposition in accordance with such policy as it may deem fitting under the circumstances, and at the same time secure to the defendant all the value that the granting act conferred upon the state or the Road Company. In case Congress makes no such provision within eight months, the defendant may apply to the court for such modification of the injunction as may seem appropriate.

The plaintiff is entitled to its costs and disbursements.