MILLS COUNTY *v.* RAILROAD COMPANIES.

1. The swamp and overflowed lands granted by the act of Sept. 28, 1850, c. 84, are subject to the disposal of the States wherein they respectively lie, and no party other than the United States can question such disposal or enforce the conditions of the grant.

2. The proviso to the second section of the act, that the proceeds of the lands shall be applied exclusively, as far as necessary, to the purpose of reclaiming the same by levees and drains, imposed an obligation which rests upon the good faith of the States. No trust was thereby attached to the lands, and the title to them, which is derived from either of the States, is not affected by the manner in which she performed that obligation.

3. The State of Iowa having granted its swamp and overflowed lands to the counties respectively in which they are situate, Mills County, insisting that certain lands were of this character, made claim thereto. The Burlington and Missouri River Railroad Company claimed them under the act of May 15, 1856, c. 28. These conflicting claims gave rise to a suit between the parties, which was decided by the State courts in favor of the county. A writ of error was thereupon brought; and, whilst it was pending here, a compromise was entered into by which the county was to make certain conveyances to the company, and to pay it the sum of $10,000 for lands previously disposed of. Conveyances were executed accordingly. Afterwards, the county instituted suit to have the compromise declared void, and the company sued for the $10,000. The State courts having sustained the compromise, and decided against the county in both suits, writs of error were brought here. *Held,* 1. That the county cannot set up that the lands were disposed of contrary to the provisions of the said act of 1850. 2. That although, after the compromise was made, the writ then pending was submitted to this court, and decided in favor of the county, yet that this did not abrogate the compromise, as the parties continued to act under it; and that the decision of the State court in the present cases is not repugnant to, nor in disaffirmance of, the opinion and judgment of this court.

ERROR to the Supreme Court of the State of Iowa.

The case is stated in the opinion of the court.

*Mr. Charles B. Lawrence* and *Mr. D. H. Solomon* for the plaintiff in error.

*Mr. Samuel Shellabarger* and *Mr. Jeremiah M. Wilson* for the defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

These cases were consolidated and heard together in the State courts, both relating to the same subject-matter; viz., the

validity of a compromise agreement made on the 27th of October, 1868, between Mills County, in the State of Iowa, and the Burlington and Missouri River Railroad Company, in reference to certain lands lying in said county, claimed by the county as swamp and overflowed lands, and claimed by the railroad company as railroad-grant lands. The claim of the county was based on the act of Congress of Sept. 28, 1850, c. 84, entitled " An Act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits; " and an act of the General Assembly of the State of Iowa, entitled " An Act to dispose of the swamp and overflowed lands in the State of Iowa, and to pay the expenses of selecting and surveying the same," approved Jan. 13, 1853 ; and other acts of the General Assembly of said State. The claim of the railroad company was based upon the act of Congress of May 15, 1856, c. 28, granting to the State of Iowa certain lands for the purpose of aiding the building of a railroad from Burlington, Iowa, to a point on the Missouri River at or near the mouth of Platte River in Nebraska.

The act of Congress first referred to declares, in effect, that to enable the State of Iowa to construct the necessary levees and drains to reclaim the swamp and overflowed lands therein, the whole of those swamp and overflowed lands, made unfit thereby for cultivation, which shall remain unsold at the passage of the act, shall be, and the same are hereby, granted to said State.

And, after providing for listing and patenting the lands, it was, by sect. 2, enacted that the fee-simple to said lands shall vest in the State of Iowa, subject to the disposal of the legislature thereof : " *Provided, however,* that the proceeds of said lands, whether from sale or direct appropriation in kind, shall be applied exclusively, as far as necessary, to the purpose of reclaiming said lands, by means of the levees and drains aforesaid."

The General Assembly of Iowa, by an act passed Jan. 13, 1853, declared " that all swamp and overflowed lands granted to the State of Iowa by the act of Congress (September 28, 1850) be, and the same are hereby, granted to the counties

respectively in which the same may lie or be situated, for the purpose of constructing the necessary levees and drains to reclaim the same ; and the balance of said lands, if any there be, after the same are reclaimed as aforesaid, shall be applied to the building of roads and bridges, when necessary, through or across said lands, and if not needed for this purpose, to be expended in building roads and bridges within the county."

On the 22d of March, 1858, the General Assembly passed another act, containing, amongst others, the following provisions : —

1. "*Be it enacted by the General Assembly of the State of Iowa,* That it shall be competent and lawful for the counties owning swamp and overflowed lands to devote the same, or the proceeds thereof, either in whole or in part, to the erection of public buildings for the purpose of education, the building of bridges, roads, and highways ; for building institutions of learning, or for making railroads through the county or counties to whom such lands belong: *Provided,* that before any of said land, or the proceeds thereof, shall be so devoted to any of the purposes aforesaid, the question whether the same shall be so done shall be submitted, at some general or special election, to the people of the county.

2. "The proper officer or officers of any county may contract with any person or company for the transfer and conveyance of said swamp or overflowed lands, or the proceeds thereof, or otherwise appropriate the same to such person or company, or to their use, for the purpose of aiding or carrying out any of the objects mentioned in the first section of this act, which said contract shall be reduced to writing and signed by the respective parties or their lawful authorized agents."

Another section prescribed the mode in which elections should be called and held, and without which any contract should be void, and concluded with the following proviso: "*Provided,* that no sale, contract, or other disposition of said swamp or overflowed lands shall be valid, unless the person or company to whom the same are sold, contracted, or otherwise disposed of, shall take the same subject to all the provisions of the acts of Congress of September 28, 1850, and shall expressly release the State of Iowa and the county in which the lands are situated, from all liability for reclaiming said land."

The Burlington and Missouri River Railroad Company was incorporated under the laws of the State of Iowa, Jan. 23, 1852, for the purpose of constructing a railroad from Burlington to the most eligible point on the Missouri River. The act of Congress of May 15, 1856, c. 28, under which the company claimed the lands, granted to the State of Iowa, for the purpose of aiding in the construction of railroads "from Burlington, on the Mississippi River, to a point on the Missouri River, near the mouth of the Platte River," &c., "every alternate section of land, designated by odd numbers, for six sections in width on each side of said roads;" but it was provided that if any sections should be sold, or become subject to pre-emption, before the lines of the roads should be definitely fixed, other lands might be selected in lieu thereof, nearest to the tiers designated, but not to exceed fifteen miles from the lines of the roads. It was further provided, that the lands thus granted to the State should be subject to the disposal of the legislature thereof, for the purpose aforesaid, and no other.

The General Assembly of Iowa, by an act dated June 3, 1856, accepted this grant, and enacted (sect. 2) " that so much of the lands, interest, rights, powers, and privileges as are or may be granted and conferred, in pursuance of the act of Congress aforesaid, to aid in the construction of a railroad from Burlington, on the Mississippi River, to a point on the Missouri, near the mouth of Platte River, are hereby disposed of, granted, and conferred upon the Burlington and Missouri River Railroad Company, a body corporate, created and existing under the laws of the State of Iowa."

The acts and clauses of acts referred to are sufficient to show the general nature of the litigation which sprang up between the parties now before the court.

The railroad company having claimed the right to appropriate certain of the lands in Mills County, which the county authorities claimed to be swamp and overflowed lands, the county, in December, 1863, commenced a suit in chancery against the railroad company to establish its title to the lands in question between them. The county court and the Supreme Court of the State decided in favor of the county, and

the railroad company brought the case to this court by writ of error, where it was pending when the compromise agreement in question was entered into. That agreement consisted of a proposition made by the county authorities to the railroad company, which was accepted by the latter. The following is a copy of the papers which passed between them : —

### Proposition of the County.

" In order to settle and finally adjust the lawsuit now pending in the Supreme Court of the United States, wherein Mills County, in the State of Iowa, is plaintiff, and the Burlington and Missouri River Railroad Company is defendant, and secure the completion of said road through Mills County, via Glenwood, in said county, we, the undersigned, agents of said county, submit the following proposition to the board of directors of said railroad company, to wit : —

" There are in dispute between the parties to the said lawsuit twenty-three thousand three hundred and sixteen acres. For the purpose of having our proposition understood, we acknowledge that we owe you acres of land to the amount of 23,316; to pay which we have and offer you odd sections, vacant (most of which is a part of the 23,316 acres), and even sections patented to the county and unsold, in the aggregate 9,080 acres; balance of the land due you, 14,236 acres. For further payment we have and offer to you of the odd sections (about all of which is of the 23,316 claimed by you), subject to pre-emption made through the county, acres to the amount of (on which nothing has been paid to the county) 4,660. Of these pre-empted lands we estimate that about one-half of the pre-emptions are fraudulent, and ought not to be recognized, but the county must ask that where bona fide improvements have been made on the same, the pre-emptors must be secured in their right to the same, and have the privilege of purchasing at $1.25 per acre of the county or company, which amount shall, in any event, go to the railroad company. Now you will have land for land, subject only to the pre-emptor's claims, until there will be due you in acres 9,576.

" The remainder, 9,576 acres, belong to bona fide settlers and purchasers, who, we must insist, shall be protected by the county. And as we have paid you all the land we have, we offer you for this balance ten thousand dollars in money.

" The company should understand that the balance of 9,576 acres

is the land, portions of which it has been settling with our individual citizens for, and there is included in the 9,576 acres all the lands the company has sold to citizen settlers at $1.25 per acre. With this understanding, the $10,000 balance we offer you will be just as much less than 9,576 acres as the company has thus sold, and, therefore, our pay would perhaps amount to $1.50 or more.

" It is understood that the said suit now pending shall be continued, by agreement of the parties, from term to term, until the conditions of this contract or proposition shall be complied with.

" It is also further understood that the foregoing proposition shall not be binding on the county of Mills, unless said railroad company shall complete said railroad through Mills County *via* Glenwood and build a depot at Glenwood, in said county, and in case said railroad company shall fail or neglect to build said railroad through Mills County *via* Glenwood, and also to build and establish a depot at Glenwood, in said county, then, and in that event, the said lawsuit shall stand for final hearing in the Supreme Court of the United States, the same as if this proposition had never been made. In case the suit shall be settled on the basis of this proposition, each party shall pay their own costs. The manner of transferring the land, whether the county shall deal with the purchasers and preemptors, or whether the railroad company under the restrictions indicated, the county is not particular about, but will agree to what may seem most practicable.

" The amount in acres, as stated above, may not be exactly correct, and probably is not, but it is believed to be nearly so; but we wish it understood that the company shall have all the swamp lands the county now hold or are entitled to in Mills County, Iowa, subject only to the conditions indicated in the foregoing. Witness our hands this July 13, 1868. (Signed) Wm. Hale; E. C. Bosbyshell; D. H. Solomon; L. W. Tubbs: majority of the committee."

*Acceptance.*

" Burlington, Iowa, October 27, 1868.

" This proposition is hereby accepted, and the terms and stipulations and conditions are agreed to by the Burlington and Missouri River Railroad Company. (Signed) Burlington and Missouri River Railroad Company: By C. E. Perkins, Supt."

This proposition and acceptance being reported by the committee to the board of supervisors of Mills County, the said board passed the following resolution : —

" After giving the report due consideration, it is resolved by the board of supervisors of Mills County, Iowa, at their regular session in November, 1868, that the proposition submitted to the Burlington and Missouri River Railroad Co., by our special railroad committee, and the acceptance of the same by the said company be, and the same is hereby, confirmed and ratified, and that the same be spread upon the records of this board.

" The ayes and nays being called for, the vote stands as follows : —

" Ayes — Allis, Forrester, Haynie, Lamb, Utterback, Wing, Ward, Russell, Summers, and Mr. Chairman.  Nays — None."

Several deeds of conveyance were executed by the board of supervisors of Mills County to the company in the years 1869, 1870, and 1871, in pursuance of this compromise agreement, conveying altogether $13,720\frac{55}{100}$ acres of land.

The suit of Mills County (one of the consolidated suits now before us) was brought in January, 1874, against that company, and others, in the Mills County District Court, by petition seeking to have the said compromise agreement and the said deeds of conveyance declared void, on the ground that the said agreement was not authorized by a vote of the people of the county, but was obtained by fraud ; that it involved a diversion of a trust fund, and a surrender by agents of the whole subject-matter in controversy in a suit of their principal ; that the judgment of the Supreme Court of Iowa, in the original suit, was duly affirmed by this court in February, 1870 ; and that, at an election held in October, 1871, for affirming or disaffirming said agreement, the people of Mills County disaffirmed the same by a vote of 1,031 against 357.

The suit of the Chicago, Burlington, and Quincy Railroad Company (successor to the Burlington and Missouri River Railroad Company) against Mills County (the other of the consolidated suits now before us), was brought in May, 1875, to recover the sum of $10,000, which by the said compromise agreement was to be paid by Mills County to the Burlington and Missouri River Railroad Company ; and as the answer of the county set up the matters alleged in the petition in the other suit, the two suits were consolidated.

The Mills County District Court decided against the county

in both suits, and the Supreme Court of Iowa affirmed the decrees of the District Court. The decrees of the Supreme Court are brought here for review upon the allegation that they are repugnant to the laws and authority of the United States.

The principal Federal question which arises in these cases is, whether the compromise agreement made between Mills County and the Burlington and Missouri River Railroad Company was in violation of the act of Congress by which the swamp and overflowed lands in the State of Iowa were granted to that State. It is alleged that this grant was made for a special purpose, and upon express trust; viz., to be applied exclusively, as far as necessary, to the purpose of reclaiming said lands by means of levees and drains, as declared in the act of 1850. It is not our province, on these writs of error, to inquire whether the compromise in question was or was not in violation of the State laws. That question was for the State court to determine; and it has been determined in the negative. Nor is it our province to inquire whether any fraud or excess of authority was committed by the agents of the county in making the compromise. That was also a question for the State court to determine; and it has been determined in the negative. We are only to inquire whether the State laws themselves, by virtue of which the said transaction was allowed and sanctioned, was such a violation of the act of Congress as to require a reversal of the decrees of the Supreme Court of Iowa.

The statutes in question have already received some consideration at the hands of this court in the cases of *Emigrant Company* v. *County of Wright*, 97 U. S. 339, and *Emigrant Company* v. *County of Adams*, 100 id. 61. Those cases came before us on appeal from the Circuit Court of the United States for the District of Iowa. In both of them, certain contracts for the purchase of swamp and overflowed lands from the county authorities were assailed by charges of fraud, and as not being in conformity with the statutes of Iowa; and those questions were necessarily discussed. It was also contended that the disposition of the lands operated as a diversion of the fund, in violation of the original grant. In the first case, the contract was declared to be void for actual fraud of the grossest char-

acter; and the other questions were not fully considered. In the latter case, this court did not consider the evidence of fraud as sufficient to avoid the purchase; and this rendered it necessary to examine the question of repugnancy between the State laws and the act of Congress with more care. On the first consideration of the case, we were disposed to think that the act of assembly of the State of Iowa passed in 1858, by which the several counties owning swamp and overflowed lands were authorized to devote the lands, or the proceeds thereof, either in whole or in part, to the erection of public buildings for the purpose of education, the building of bridges, roads, and highways, or for building institutions of learning, or for making railroads through the county, was repugnant to the provisions of the act of Congress, as authorizing a diversion of the fund from its proper purposes; and that this repugnancy rendered such dispositions of the lands void. But, on a reconsideration of the subject, we were inclined to modify our first impressions. The following extract from the opinion then delivered will show the final view which we took of the subject: " The argument against the validity of the scheme [namely, that created by the act of 1858] is, that it effects a diversion of the proceeds of the lands from the objects and purposes of the congressional grant. These were declared to be to enable the State to reclaim the lands by means of levees and drains. The proviso of the second section of the act of Congress declared that the proceeds of the lands, whether from sale or direct appropriation in kind, should be applied exclusively, as far as necessary, to these purposes. This language implies that the State was to have full power of disposition of the lands; and only gives direction as to the application of the proceeds, and of this application only ' as far as necessary ' to secure the objects specified. It is very questionable whether the security for the application of the proceeds thus pointed out does not rest upon the good faith of the State, and whether the State may not exercise its discretion in that behalf without being liable to be called to account, and without affecting the titles to the lands disposed of. At all events, it would seem that Congress alone has the power to enforce the conditions of the grant, either by a revocation thereof, or other suitable action, in a clear case of viola-

tion of the conditions.    And as the application of the proceeds
to the named objects is only prescribed 'as far as necessary,'
room is left for the exercise by the State of a large discretion
as to the extent of the necessity." p. 69.

Upon further consideration of the whole subject, we are con-
vinced that the suggestion then made, that the application of
the proceeds of these lands to the purposes of the grant rests
upon the good faith of the State, and that the State may exer-
cise its discretion as to the disposal of them, is the only cor-
rect view.    It is a matter between two sovereign powers, and
one which private parties cannot bring into discussion.    Swamp
and overflowed lands are of little value to the government of
the United States, whose principal interest in them is to dis-
pose of them for purposes of revenue; whereas the State gov-
ernments, being concerned in their settlement and improvement,
in the opening up of roads and other public works through
them, in the promotion of the public health by systems of
drainage and embankment, are far more deeply interested in
having the disposal and management of them.    For these
reasons, it was a wise measure on the part of Congress to cede
these lands to the States in which they lay, subject to the dis-
posal of their respective legislatures; and although it is specially
provided that the proceeds of such lands shall be applied, "as
far as necessary," to their reclamation by means of levees and
drains, this is a duty which was imposed upon and assumed by
the States alone, when they accepted the grant; and, whether
faithfully performed or not, is a question between the United
States and the States, and is neither a trust following the lands
nor a duty which private parties can enforce as against the
State.

We are, therefore, of opinion that the act of Congress can-
not be invoked by the county of Mills for the purpose of show-
ing that its provisions have been violated by the State laws,
under which alone the county itself can set up any title to the
lands, and by virtue of which, as decided by the State court,
it has disposed of them for railroad purposes.

But it is contended that the decision of this court, rendered
in February, 1870, affirming the decree in the original suit,
and adjudging the title of the lands to be in Mills County, and

not in the Burlington and Missouri River Railroad Company, is rendered null and ineffective by the decrees of the Supreme Court of Iowa in these cases, and hence that these decrees are against the right of Mills County as established by authority of the Supreme Court of the United States, and ought for that cause to be reversed. We do not think that this result necessarily follows. The compromise agreement of 1868 was made whilst the writ of error in that original suit was pending in this court, and before the cause was heard. That compromise settled the matters in difference between the parties. There may have been reasons independent of the controversy relating to the particular lands in question in that suit why it was desirable to have the legal questions involved therein settled by the judgment of this court. The county of Mills and the railroad company may have been respectively interested in other lands similarly situated in respect to title as the lands involved in that suit. But if this were not so, the result would only be that the litigation was continued here after the parties had adjusted their rights by agreement, — an improper proceeding, undoubtedly, but one which would not abrogate or render null the agreement itself, unless the parties voluntarily waived and abandoned it. That they did not waive or abandon it is manifest from the fact that deeds of conveyance were executed by the county to the railroad company in pursuance of the compromise agreement after the decision of this court was rendered; namely, one deed dated Sept. 6, 1870, for 3,560 acres, and another deed dated June 19, 1871, for 240 acres.

We are, therefore, of opinion that the decrees made by the Supreme Court of Iowa in these cases do not violate any act of Congress, nor disaffirm the judgment of this court, nor impair any right, title, or immunity which the county of Mills has a right to claim under any authority of the United States. The said decrees must, therefore, be

*Affirmed.*