**EAGLE OIL CO. v. SINCLAIR PRAIRIE OIL CO. et al.**

**HASKELL v. SAME.**

No. 1251.

District Court, N. D. Oklahoma.

Sept. 22, 1938.

Lawrence Mills, of Tulsa, Okl., for plaintiffs.

West & Davidson, Edward H. Chandler, Summers Hardy, T. H. Hammett, and Paul B. Mason, all of Tulsa, Okl., for defendants.

FRANKLIN E. KENNAMER, District Judge.

This controversy presents for its ultimate problem, the questioned existence of the right of defendant Sinclair-Prairie Oil Company, since December 22, 1930, to operate upon certain lands in Tulsa County, Oklahoma, as an oil and gas lessee thereof. The solution of this problem requires a consideration of the inception of, and the subsequent dealings in connection with, three separate oil and gas mining leases covering said lands, which leases will be mainly referred to hereinafter as, respectively, the "Success," the "Southern," and the "Creek," leases.

The lands involved were allotted to Andrew Sewell, a Creek Freedman, as his surplus allotment. On April 27, 1904, Sewell executed an oil and gas lease thereon to the Success Oil and Gas Company. This lease provided for a one-tenth royalty to lessor, and was for a term of ten years and as long thereafter as operations should be profitable.

On June 14, 1904, Sewell conveyed the lands by warranty deed to Bradley Realty Bank and Trust Company, and this Com-

pany, on October 10, 1904, executed another oil and gas lease covering the lands to Southern Oil and Land Company. In this lease, the lessee agreed to produce oil and gas within one year from the date of its discovery on the lands, and was granted the right to continue such production as long as profitable. It also provided for a one-tenth royalty to lessor.

The Bradley Realty Bank and Trust Company, on January 16, 1905, conveyed the lands by warranty deed to John W. Graves, who proceeded to execute an oil and gas lease thereon to the Creek Oil Company under date of December 22, 1905. This lease provided for a royalty of one-eighth of the oil and $150 per year for each gas well, and was for a term of fifteen years and as long thereafter as oil or gas be found in paying quantities, "not exceeding in the whole the term of twenty-five years from the date hereof." After executing this lease, Graves sold one-half of the mineral interest in the lands to other persons, which interest subsequently came into the ownership of the defendants herein other than the Sinclair-Prairie Oil Company.

About the first of the year 1906, the Success Oil and Gas Company began the building of a derrick on said lands for the purpose of drilling for oil and gas, but never completed the derrick or further actively operated for the reason that about March 1, 1906, the Creek Oil Company removed the partially erected derrick and proceeded to · erect a derrick of its own and drill upon the lands. Thereafter, litigation ensued in the United States District Court for the Western District of the Indian Territory between the Success Oil and Gas Company and the Creek Oil Company in one suit, and between Graves and the Southern Oil and Land Company in another, as to the rights and priorities with respect to the oil and gas which had been discovered and was being produced from the lands; each of the three separate lessees contending that it held the superior lease on the premises.

On May 31, 1906, Graves and his co-owners of the royalty made a contract with the Southern Oil and Land Company, by the terms of which it was agreed that Graves should dismiss his then pending suit against said Company, and that he, his heirs and assigns, would not attack the validity of the Southern lease for any cause then or thereafter existing, and

further, that any determination of their respective rights made by agreement among the three rival lease claimants should be binding upon Graves and his co-owners, and that in the event the Southern lease was determined to be the prior and effective lease, the royalty owners should receive a one-eighth of the oil instead of one-tenth as recited in the lease. On July 20, 1906, the Southern Oil and Land Company, for a consideration of $5,000, assigned the Southern lease to the Creek Oil Company. On the day following this assignment, Graves and his associates made a contract with the Success Oil and Gas Company of a somewhat similar type as the contract they had previously made with the Southern Oil and Land Company. This agreement recited that litigation was then pending ˙to determine the rights of the Success Oil and Gas Company under its lease from Sewell, and that the Creek Oil Company was engaged in producing oil from the lands, but payment for the oil was being withheld by the marketing company to which it was being sold. The contract further provided that Graves and his associates would institute no proceeding of any kind to cancel the Success lease, or in any way injure the rights and claims of the lessee thereunder, and they would not purchase or˙ otherwise acquire any rights or claims to the oil and gas adverse to the interest of such lessee, and that in the event the latter, through compromise or otherwise, finally gained the right of possession of the lands for the purpose of carrying out the provisions of its lease from Sewell, then all rights ˙granted by the Success lease would be recognized by Graves and associates, except that the original lease was to be modified so that the royalty on oil would be enlarged from one-tenth to one-eighth.

The suit between the Success Oil and Gas Company and the Creek Oil Company went to judgment on May 27, 1907, the court decreeing that the Success lease was invalid because the restrictions with reference to the execution of oil and gas leases imposed by the Second Creek· Agreement had not been removed at the time Sewell entered into the lease. The Success Oil and Gas Company appealed from this decision, and the Creek Oil Company prosecuted a cross-appeal. However, without awaiting a decision of the appellate court, on December 4, 1907, these two contesting lessee claimants entered into a contract of settlement whereby the Creek

Oil Company agreed to pay the Success Oil and Gas Company the sum of $65,000 "for all its right, title and interest in and to the oil and gas in the above described lands," and both parties agreed to dismiss their appeals. $30,000 was paid by the Creek Oil Company upon the execution of the argument, and the balance was thereafter paid out of oil runs, pursuant to the contract, and the appeals were dismissed.

The Creek Oil Company continued to operate the property until July, 1909, when it sold the same to the Prairie Oil and Gas Company, from which the defendant Sinclair-Prairie Oil and Gas Company acquired its now assailed title.

John W. Graves received and accepted royalties from the operations on these lands, without objection, up to the time of his death, which occurred in February, 1932. Thereafter, his personal representatives, during the period of administration on his estate, and succeeding them, the plaintiff Elda Audrey Haskell, as widow and devisee of Graves, were paid the royalty, which was received and accepted without complaint or dissent until in August, 1936.

In the present litigation, the plaintiffs, Elda Audrey Haskell, and the Eagle Oil Company, as her lessee, assert that the defendant Sinclair Prairie Oil Company is without any right or authority to operate the lands involved for the extraction and production of oil and gas therefrom, and that no such right has existed in either said defendant, or its immediate predecessor in title, the Prairie Oil and Gas Company, since December 22, 1930, the date of the expiration of the twenty-five year term of the Creek lease; the plaintiffs contending that neither the Sinclair-Prairie Oil Company, nor either of its operating predecessors in title, namely, the Creek Oil Company and the Prairie Oil and Gas Company, ever had, exercised or claimed any lessee rights except as lessee under the Creek lease.

In amplification of their position, plaintiffs say: First, the settlement contract of December 4, 1907, between the Success Oil and Gas Company and the Creek Oil Company did not contemplate or effect any transfer or conveyance to the latter of either the Success lease, or any of the rights of the lessee thereunder, but the contract was made and the consideration paid solely for the purpose of dismissing the appeals and to get the Success lease

out of the way, and therefore it cannot be considered that the Creek Oil Company or its successors in title ever operated the property under any authority other than the Creek lease which expressly terminated December 22, 1930. Second, assuming, however, the Creek Oil Company did acquire the Success and Southern leases, still the Prairie Oil and Gas Company, the immediate predecessor in title of the defendant Sinclair-Prairie Oil Company, never acquired anything more from the Creek Oil Company by the assignment of July, 1909, than the Creek lease, which has terminated as before stated. Third, defendant Sinclair-Prairie Oil Company, having acquired the Creek lease, became a tenant of Graves thereunder, and consequently, under the familiar rule of estoppel of the tenant to deny the landlord's title, is prevented from claiming any title to either the Success lease or the Southern lease, as any such claim would be the assertion of an adverse title against its landlord. Fourth, both the Success lease and the Southern lease have been long since abandoned, and the defendant may not claim any rights under either of them on that account.

The defendant disputes each of the foregoing contentions of plaintiffs, and also relies upon defenses of estoppel, waiver and laches to defeat the claims of plaintiffs.

■ Examining the first of the above propositions advanced by plaintiffs, it is, of course, pertinent to refer not only to the terms of the settlement agreement between the Success Oil and Gas Company and the Creek Oil Company, but also to the previous contracts entered into by Graves and associates with the Southern Oil and Land Company and the Success Oil and Gas Company. The settlement contract recites first that it is drawn in consideration of the settling the lawsuit between the Success Oil and Gas Company and the Creek Oil Company then pending in the Supreme Court of Oklahoma, and then states that the Creek Oil Company agreed to pay to the Success Oil and Gas Company the sum of $65,000 "for all its right, title and interest in and to the oil and gas in the above described lands." Plaintiffs see in the above cited clauses an ambiguity in the contract as to the consideration, which, they say, is cleared away by a subsequent provision reciting that the parties agree for the consideration before stated (the

$65,000 to be paid) to dismiss their respective appeals, thereby making plain the intent of the parties that the real consideration was the dismissal of the appeals and not the conveyance of the Success lease. Further support is given this interpretation, they argue, by reason of the fact that no independent instrument of assignment of the Success lease was executed. It is difficult to follow this reasoning of plaintiffs', and it is not substantiated by the language of the contract; the terms of which make it clearly apparent that the Success lease and all rights of the lease thereunder, except as modified as to the quantum of royalty by virtue of the agreement of the Success Oil and Gas Company with Graves and associates, directly passed to the Creek Oil Company, and thereupon the Success lease and the Creek lease became united under a single ownership. And, in view of the previous contracts made by Graves and associates with the Success Oil and Gas Company and the Southern Oil and Land Company, it would appear that Graves and associates contemplated and sanctioned settlements of such character among the rival lessees.

■ Plaintiffs also contend that the dismissal of the appeals left in effect the judgment of the lower court declaring the Success lease invalid, and for this reason it was not in contemplation of the contracting parties that it be conveyed. The authorities do not support such a conclusion. The settlement was a compromise, which is always favored in law, and it effectually extinguished the judgment. Sango v. Parks, 44 Okl. 223, 143 P. 1158; Tracy v. Norvell, 81 Okl. 94, 196 P. 929; Wray v. Sumerset Oil Co., 89 Okl. 71, 213 P. 836; Munn v. Mid-Continent Motor Securities Co., 100 Okl. 105, 228 P. 150; Armstrong v. Sacramento Valley Realty Co., 179 Cal. 648, 178 P. 516, 517; Little v. Brown, 40 Ariz. 206, 11 P.2d 610; Mills County v. Burlington & M. R. R. Co., 107 U.S. 557, 2 S.Ct. 654, 27 L.Ed. 578.

■ For their second proposition, plaintiffs mainly rely upon the terms of the assignment, dated July 22, 1909, from the Creek Oil Company to the Prairie Oil and Gas Company, whereby the latter was conveyed "The leasehold interest and rights of the said Creek Oil Company in and upon the S.½ of N.W.¼ and S.½ of N.W.¼ of the S.W.¼, all in Section 10, Township 17 North, Range 12 East, in Tulsa County and State of Oklahoma, and sometimes known and designated as the John W. Graves lease." Plaintiffs refer to the usual modern form of assignment of an oil and gas lease, in which it is common to identify an assigned lease as executed on a certain date by a named lessor to a named lessee, and then to state the book and page and place of recordation; and plaintiffs contend that the assignment under consideration because of the phrase "sometimes known and designated as the John W. Graves lease" purported to assign only the lease executed by Graves to the Creek Oil Company on December 22, 1905, the same as if such lease had been particularly identified in the manner described by the text of the mentioned form. The meaning of the language used cannot be so narrowly restricted when the ordinary import of the chosen words is considered. "The leasehold interest and rights" is broad enough to include whatever rights the Creek Oil Company owned in respect to the described premises, so plaintiffs' contention cannot be upheld from the face of the instrument. At the time this assignment was executed, the Creek Oil Company had title to all three of the leases, as hereinbefore set forth.

It is true that witness Potter, who was President of the Creek Oil Company at the time this assignment was made, stated that his company only claimed one lease—the Creek lease—and assumed to sell only that. However, the receipt executed by the Creek Oil Company on July 23, 1909, contained this statement, "Received of the Prairie Oil & Gas Co, the sum of $225,-000.00 in full payment for leases, personal property, equipment and all rights of the Creek Oil Co. in and to the S.½ S.W.¼ and S.½ N.E.½ S.W.¼ and W.½ N.E.¼ all in Section 10, Township 17 North, Range 12 East in Tulsa County, Oklahoma." Also in a letter written to the Prairie Oil and Gas Company by the Creek Oil Company on July 20, 1909, and signed by Potter as President, reference is made to the sale of "our oil and gas property (giving the description as contained in the receipt)." Moreover, the abstract of title to the property was examined by William H. Love, attorney for the Prairie Oil and Gas Company, who is now dead. This opinion contained the following:

"Oil and Gas Leases:

"(1) Andrew Sewell to Success Oil and Gas Co. Apr. 27-1904.

"(2) Bradley Realty Bank and Trust Co. to Southern Oil and Land Co. Oct. 10-1904.

"(3) John W. Graves to Creek Oil Co. Dec. 22-1905,"

and in his "Statement of Examiner's Opinion as to Title and Requirements," Love stated: "First lease is considered as the one in force and effect." · The evidence also disclosed that all three leases, the "Success," the "Southern," and the "Creek," were listed on the lease record of the Prairie Oil and Gas Company. This evidence rather plainly shows that the Prairie Oil and Gas Company intended to acquire whatever rights the Creek Oil Company. possessed, and there were other circumstances to add weight to the inevitable conclusion that the Creek Oil Company transferred to the Prairie Oil and Gas Company "all rights," no matter from what sources acquired by the Creek Oil Company.

█ In support of their third proposition, plaintiffs seek to invoke the well established principle that a tenant is estopped to deny the title of the landlord who put him in possession without first surrendering possession to the landlord. This, upon the predicate that the Creek Oil Company became a tenant of Graves by reason of the Creek lease, and successively, the Prairie Oil and Gas Company and the defendant Sinclair Prairie Oil Company occupied a similar relation, and became subject to this rule of estoppel and unable to assert any rights under either the Success or the Southern lease. Whatever may have been the legal relationship established between Graves and the operating companies by the transactions had, whether they were tenants of Graves, or not, it is manifest that the rights now owned by defendant were acquired by its predecessor in title, the Creek Oil Company, with the expressed consent of Graves and associates under authority of the heretofore discussed contracts made between the latter and the Success Oil and Gas Company and the Southern Oil and Land Company. Certainly one who acquires a title with the consent of his landlord should not be estopped from asserting such title against the landlord. At the time these contracts were consummated, Graves and associates, because of the conflicting claims of the different lessees, were receiving no royalties from the oil production, and it was also doubtful as to which lease would eventually be held paramount, and what rate of royalty would finally come to the royalty owners. Therefore, it was but natural that for the purpose of accelerating the payment to them of royalties, and making certain that the payment would be one-eighth, that Graves and his co-owners were willing to accede to any merger of the leases by the lessees under one ownership which would pay to them a one-eighth royalty, and hold for the term of either of the leases. And that is the essence of the transactions disclosed here by the pleadings and evidence, and by them, Graves, for himself and his successors in title, effectively waived the right to insist that the Success lease is not the operating lease. Because of the foregoing, it is unnecessary to rule upon the proposition suggested by defendant that this is not the character of suit—not being a suit for possession—in which the tenant may be estopped to deny his landlord's title, it should not be passed without observing that such proposition might be sufficient to defeat the application of the rule plaintiffs seek to invoke. In addition, Graves was not in fact in possession when the Success Oil and Gas Company entered upon it and began the construction of its derrick which was removed by the Creek Oil Company, which may be said to have taken possession by force, and not put into possession by Graves, and if the Creek Oil Company was not put into possession by Graves, there would be no inhibition against its successor in title, denying the title of Graves.

Therefore, for the reasons above stated, the third proposition of plaintiffs cannot be sustained.

█ In view of the conclusions hereinabove reached, it follows as a necessary sequence that the fourth stated proposition of plaintiffs must be ruled against them. The Success lease has cerainly never been abandoned, and under the fair principles of equity should be held to be the present operating lease, and if this lease be alive, of course the status of the Southern lease is wholly immaterial. But, in fact there is nothing in the record to show an abandonment of either of these two leases when the elements of abandonment are taken into consideration. Recurring to the situation as to the success lease, it is worthy of repetition that development of the property under this lease was begun prior to any development by the Creek Oil Company, and the development thus undertaken by the Success Oil and Gas Company was halted, not by choice of said company, but by the act of the Creek Oil Company in forcibly removing the

partially erected derrick. Thereafter, and up to the time the Creek Oil Company purchased the Success lease, the Success Oil and Gas Company strenuously contended it owned the paramount lease. Clearly, there ws no abandonment of the Success lease up to this point. After the Success lease was transferred to the Creek Oil Company, the latter continued to produce oil from the property, and so likewise have its successors in title. It is not sound reason that either the Creek Oil Company or its immediate vendee, the Prairie Oil and Gas Company, each paying a very large consideration for the operating rights to this property, would forego and abandon a lease under which the lessee might hold so long as production was had in paying quantities for the right to hold under a lease of limited duration. But, say plaintiffs, if there were a holding under more than one lease, a royalty should have been paid under each lease, and the fact that only one-eighth royalty was paid is further evidence of the abandonment of all except the Creek lease. This position is hardly tenable on its face. Besides, as heretofore stated, the different leases merged into one ownership, and by consent of the royalty owners the royalty was fixed at one-eighth.

This disposes of all the grounds upon which plaintiffs base their case, and the decision against them might well rest here without further comment.

■ But, there are other matters arising from the record to aid in the defeat of plaintiffs' claims. The effect of the agreements made by Graves with the Success Oil and Gas Company and the Southern Oil and Land Company has already been noticed. The acceptance of royalties by Graves after the term of the Creek lease had expired, and the further acceptance of royalties by the plaintiff Haskell, after the death of Graves, was an affirmation of the plain intent of the foregoing contracts made by Graves that the Creek Oil Company and its assignees should have the right to operate the property so long as gas or oil should be found in paying quantities. Certainly, the plaintiffs are estopped because of these contracts and the construction placed thereon by both Graves, in his life time, and plaintiff Haskell, after the death of Graves.

■ Again, on December 13, 1933, plaintiff Haskell executed a division order, in which it was directed that the oil run from this property be distributed and set apart, the one-eighth royalty interest to herself and other co-owners, and the seven-eighths working interest to Sinclair Prairie Oil Company. This should work an estoppel against the plaintiffs. See the following authorities: Headley v. Hoopengarner, 60 W.Va. 626, 55 S.E. 744; Carlisle v. National Oil & Development Co., 108 Okl. 18, 234 P. 629; Garfield Oil Co. v. Crews, 134 Okl. 229, 273 P. 228; Capps v. Hensley, 23 Okl. 311, 100 P. 515.

Also, plaintiff Haskell on September 5, 1936, made a written conveyance to one Metzger of "an undivided 1/40th interest in and to all the oil, gas, coal and other minerals" under the lands involved, with a provision therein that the land described "is understood to be subject to an oil and gas lease now of record; it is intended that said outstanding lease is fully embraced in the general terms of this conveyance." It is clear that this reference was not to the Creek lease, as the term of that lease had expired nearly six years before.

■ Defendants assert that independently of estoppel, either in pais or by contract, both the plaintiff Haskell, and her former husband, John W. Graves, under the facts and circumstances herein delineated, waived the right to assert any claim that the defendant Sinclair Prairie Oil Company and its predecessors in title were without authority to produce and market oil and gas from the lands involved so long as such production continues to be profitable. It has been said that the doctrine of waiver belongs to the family of estoppel, and also "a waiver may be created by acts, conduct, or declarations insufficient to create a technical estoppel." "However, the distinction, it has been said, is more easily preserved in dealing with express waiver, but where the waiver relied upon is constructive or merely implied from the conduct of a party, irrespective of what his actual intention may have been, it is at least questionable if there are not present some of the elements of estoppel." 67 C.J. pp. 294, 295. Without attempting any further distinction as between "waiver" and estoppel, it is sufficient to say that if either here exists plaintiffs are precluded from the relief sought, and it is certain that either one or the other, or both, such barriers are presented by the facts and circumstances in evidence. The following authorities, cited by defendant in support of the existence of a waiver, are pertinent: Somers v. Germania Nat. Bank, 152 Wis. 210, 138 N.W.

713; Pabst Brewing Co. v. Milwaukee, 126 Wis. 110, 105 N.W. 563; Scott v. Signal Oil Co., 35 Okl. 172, 128 P. 694.

Finally, the plaintiffs are not entitled to prevail herein because of laches. The deaths of Graves and Love, the attorney for the Prairie Oil and Gas Company, two important participants in some of the main transactions, and the considerable age of the many transactions apparently acquiesced in by all parties making it now difficult to fully present much material evidence thereof together with other circumstances hereinbefore enumerated, make this a proper case for equity to interpose the salutary doctrine of laches for the protection of the defendant.

A decree may be drawn and submitted giving judgment for the defendant in accordance with the conclusions hereinabove reached.