## EAGLE OIL CO. et al. v. SINCLAIR PRAIRIE OIL CO.
### No. 1817.

Circuit Court of Appeals, Tenth Circuit.
June 29, 1939.

Lawrence Mills, of Tulsa, Okl., for appellants.

A. A. Davidson, of Tulsa, Okl. (Edward H. Chandler, Preston C. West, Paul B. Mason, and Summers Hardy, all of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

A tract of land containing 100 acres was allotted to Andrew Sewell, a Creek Freedman, as his surplus allotment, and patent duly issued therefor. On April 27, 1904, Sewell executed and delivered to the Success Oil & Gas Company[1] an oil and gas lease[2] covering such land. The term of the lease was 10 years, and, should minerals be found in paying quantities, so long thereafter as the Success should deem it profitable to operate the lease. The lease reserved a one-tenth royalty in Sewell, and was duly recorded on May 14, 1904.

On June 14, 1904, Sewell conveyed the land by warranty deed to the Bradley Realty Bank and Trust Company.[3] On October 10, 1904, the Bank executed and delivered an oil and gas lease[4] covering the land to the Southern Oil & Land Company.[5] The lease reserved to the Bank a one-tenth royalty. It provided that if oil and gas should be found in paying quantities, the lease should continue so long as the Southern, its successors or assigns, should deem it profitable to operate the property.

On January 16, 1905, the Bank conveyed the land by warranty deed to John W. Graves.

On December 22, 1905, Graves executed and delivered to Creek Oil Company[6] an oil and gas lease[7] covering the land. The lease reserved to Graves a royalty of one-eighth and provided that it should run for a term of 15 years and so long thereafter as oil or gas should be found in paying quantities, but not to exceed a term of 25 years. After the execution of this lease, Graves conveyed an undivided one-half interest in the mineral rights to other persons.

In the early part of 1906, Success entered upon the land under its lease and commenced the erection of a derrick for the purpose of drilling for oil and gas. About March 1, 1906, Creek removed the partially constructed derrick of Success and proceeded to erect a derrick of its own on the land. Shortly thereafter, Success brought a suit against Creek in the District Court of the United States for the Western District of the Indian Territory. Creek filed a cross-complaint. Each asserted the validity of its own lease and challenged the validity of its adversary's lease.

On May 27, 1907, a decree was entered in the suit adjudging that the Graves lease was valid and subsisting and quieting Creek's title as against Success. The lessors not being parties to the suit, the decree was not an adjudication as between Sewell and Success with respect to the Success lease and Graves and Creek with respect to the Graves lease. Both parties appealed from the decree and upon the advent of statehood the appeals were lodged in the Supreme Court of Oklahoma. While the appeals were pending, Creek and Success entered into a compromise agreement whereby Creek agreed to pay to Success "for all its right, title and interest in and to the oil and gas in the * * * land the sum of Sixty-five Thousand ($65,000.00) Dollars." The agreement stipulated that $30,000 was to be paid in cash and the balance out of oil runs. The agreement further stipulated "the parties hereto mutually agree for the consideration hereinabove stated to dismiss their respective appeals of said cause as the same now stands upon the docket of the Supreme

---

[1] Hereinafter referred to as Success.

[2] Hereinafter referred to as the Success lease.

[3] Hereinafter referred to as the Bank.

[4] Hereinafter referred to as the Southern lease.

[5] Hereinafter referred to as the Southern.

[6] Hereinafter referred to as Creek.

[7] Hereinafter referred to as the Graves lease.

Court of the State of Oklahoma." The appeals were dismissed in accordance with the stipulation and the cash payment and deferred payments were paid. Division orders were executed to carry out the agreement with respect to the deferred payments' to be paid out of oil, by Success and its assignee, Tyrrell, and certain of the deferred payments to Tyrrell, as Success' assignee, were paid by the Prairie Oil & Gas Company, a Kansas corporation.[8]

Graves commenced an action in the District Court of the United States for the Western District of the Indian Territory to cancel the Southern lease. Thereafter, on May 31, 1906, Graves and his coowners entered into an agreement with Southern. The agreement recited the Southern lease, that the validity thereof was contested by Creek, and the pendency of the action brought by Graves. It provided that Graves should dismiss his action, that neither Graves nor any of his coowners should maintain any action to cancel the Southern lease for any cause then or thereafter existing, that any determination of the respective rights of the several lessees made by decree of court or by agreement among the lessees should be binding upon Graves and his coowners, and that in the event the Southern lease should be determined to be the first valid and subsisting lease the royalty reserved thereunder should be increased from one-tenth to one-eighth.

On July 21, 1906, Graves and his coowners entered into a contract with Success whereby they agreed that in the event the Success lease should be adjudged to be the first valid and subsisting lease, or recognized by agreement of the parties to be the first valid and subsisting lease, then the royalty reserved in such lease should be increased from one-tenth to one-eighth. It further stipulated that Graves and his coowners should not institute or participate in, directly or indirectly, any action or suit which might in any way injure the rights or claims of Success.

On July 20, 1906, Southern assigned its lease to Creek for a consideration of $5,000. By such assignment and the compromise agreement with Success, Creek acquired all the right, title, and interest in the three leases, the royalty reserved by agreement of the parties having been made equal under each of the three leases. Creek continued to operate the property until July 22, 1909, when it executed and delivered an assignment to the Kansas Prairie of the "leasehold interests and rights of * * * Creek * * * in and upon (here was inserted a description of the land here involved) and sometimes known and designated as the John W. Graves lease."

On July 19, 1913, Graves entered into a contract with the Kansas Prairie authorizing it to extract casinghead gas from the land for a consideration of one-eighth of the gross receipts from such casinghead gas produced therefrom. This contract was unlimited as to time.

On March 30, 1932, the Kansas Prairie assigned all its right, title, and interest in and to the leases and the casinghead gas contract to the Prairie Oil Company, a Delaware Corporation.[9]

On April 1, 1932, the Delaware Prairie assigned to the Sinclair Prairie Oil Company, a Maine corporation,[10] all its right, title, and interest in and to the leases on the land and the casinghead gas contract.

On October 27, 1932, the Commonwealth Oil & Gas Company, formerly the Kansas Prairie, executed and delivered to Sinclair assignments specifically covering the Southern and Success leases.

Graves died testate February 9, 1932. At the time of his death he was the owner of an undivided one-half interest in the oil, gas, and other minerals in and under the land. He left a last will and testament which was duly admitted to probate by which he devised such land to Elda Audrey Haskell. Up to the date of his death Graves continued to accept royalties from the Kansas Prairie. During the period of the administration of his estate, his personal representative continued to accept royalties from the Kansas Prairie and its successors. After the estate was closed, Haskell continued to accept royalties from Sinclair.

On July 24, 1937, Haskell executed and delivered to the Eagle Oil Company[11] an oil and gas lease covering her undivided

[8] Hereinafter referred to as the Kansas Prairie.

[9] Hereinafter referred to as the Delaware Prairie.

[10] Hereinafter referred to as Sinclair.

[11] Hereinafter referred to as the Eagle.

one-half interest in the oil, gas, and other minerals in and under the land.

On September 23, 1937, Haskell brought a suit in the district court of Tulsa County, Oklahoma, against Sinclair for a decree adjudging that the Graves lease expired on December 22, 1930, and for an accounting for the oil and gas extracted by Sinclair and its predecessors from the land subsequently to that date. On the same day Eagle brought an action in the district court of Tulsa County, Oklahoma, against Sinclair, Ruth A. Whitchill, the Whitchill Oil Corporation, and Mrs. Sidney A. Terry [12] for a decree adjudging that Eagle is the owner of a valid and subsisting oil and gas lease covering an undivided one-half interest in and to the oil, gas, and other minerals in and under the land, and for an accounting for the oil and gas produced from the land after July 24, 1937.

Both actions were removed to the District Court of the United States for the Northern District of Oklahoma. They were consolidated and docketed as equity cause No. 1251. From a decree in favor of Sinclair, D.C., 24 F.Supp. 612, Haskell and Eagle have appealed.

■ Haskell and Eagle contend that the sole effect of the compromise agreement between Success and Creek was to settle the pending litigation and that it did not operate as an assignment of the Success lease to Creek. While the decree of the territorial court had adjudged the Success lease to be invalid, Success had appealed from that decree, and while the appeal was pending the compromise agreement was entered into. It provided for a dismissal of the appeals and further provided "that for and in consideration of settling above styled lawsuit between the companies hereto now pending in the Supreme Court of Oklahoma, in reference to a lease on (here was set out a specific description of the land here involved) * * * the Creek * * * agrees to pay to * * * the Success * * * for all its right, title and interest in and to the oil and gas in the above described land the sum of Sixty-five Thousand ($65,000.00) Dollars."

Had it been the intention of the parties to treat the decree of the territorial court as continuing in force, Success would have had no right or interest to sell. Success continued to assert a claim of right under its lease until it entered into the compromise agreement. Plainly, the intention of the parties was to convey to Creek the rights of Success under its lease. A separate assignment thereof was unnecessary. Alkire v. King, 183 Okl. 187, 80 P.2d 309, 311.

The effect of the compromise agreement was to extinguish the asserted causes of action and the decree and to fix the rights, titles, and interests of the respective parties in accordance with its provisions.[13]

■ They further contend that the assignment from Creek to the Kansas Prairie did not embrace the Success and Southern leases. This contention is predicated on the recital "sometimes known and designated as the John W. Graves lease." The three leases had merged in one ownership and by agreement of the parties the royalties under the Success and Southern leases had been increased to one-eighth, the amount of royalty reserved in the Graves lease. Graves had come into ownership of the land. There is nothing inconsistent in referring to all three leases as the Graves lease. Furthermore, the assignment expressly transferred all the *leasehold interests and rights* of Creek to the Kansas Prairie and was clearly broad enough to embrace all three leases.

■ They further contend that Sinclair, having acquired the Graves lease from Creek, became a tenant of Graves and since a tenant will not be permitted to deny his landlord's title, Sinclair is estopped from claiming under either the Success or Southern lease. Graves and his coowners entered into contracts with Southern and Success expressly agreeing to recognize the Success and the Southern leases in consideration of an increase in the royalty from one-tenth to one-eighth. Creek acquired such leases with the ex-

[12] The three defendants last named were the owners in the aggregate, subject to the outstanding leases, of an undivided one-half interest in the oil, gas, and other minerals in and under the land.
[13] Dakota County v. Glidden, 113 U.S. 222, 225, 5 S.Ct. 428, 28 L.Ed. 981; Armstrong v. Sacramento Valley Realty Co., 179 Cal. 648, 178 P. 516, 517; Wray v. Sumerset Oil Co., 89 Okl. 71, 213 P. 836; Oglesby v. Attrill, 105 U.S. 605, 611, 26 L.Ed. 1186.

press consent of Graves and his coowners. Since Creek acquired title to the Southern and Success leases with the consent of Graves and his coowners, the doctrine of estoppel is inapplicable to Sinclair, which claims through mesne assignments from Creek.

Finally, they contend that the Success lease was abandoned. The evidence discloses that Success started development on the property prior to Creek; that such development was forcibly stopped by Creek; that Creek acquired the other outstanding leases and that it and its successors have since continuously developed the property and produced oil and gas therefrom. Abandonment is a question of intention. Carter Oil Co. v. Mitchell, 10 Cir., 100 F.2d 945, 951. The subsequent action of the parties refutes abandonment of the Success lease. Sinclair and its predecessors in title continued to operate the premises and produce oil and gas therefrom after the expiration of the Graves lease. Graves, his administrator, and Haskell, the devisee under his will, continued to accept royalty payments from Sinclair and its predecessors in title after the expiration of the Graves lease, in accordance with the royalty provision of the Success lease. This plainly indicates that the parties regarded either the Success lease or the Southern lease, or both, in force and effect.

After the expiration of the Graves lease, Graves and his personal representative continued to accept royalties from the Kansas Prairie; and Sinclair, for a valuable consideration, purchased the leasehold interests of the Delaware Prairie and its predecessors and took assignments thereof. The personal representative of Graves and Haskell recognized the validity of those assignments and the fact that Sinclair acquired a leasehold estate thereunder, by accepting royalties from Sinclair in accordance with the Southern and Success leases, and neither Haskell nor Eagle challenged Sinclair's title until September 23, 1937, almost seven years after the Graves lease expired by its terms, and more than five years after the first assignment to Sinclair. Under well settled principles, Haskell is now estopped to deny the leasehold interests of Sinclair. Eagle is charged with knowledge of the recorded Success lease and of Sinclair's claims.

The decree below was clearly right and is accordingly affirmed.