INDIAN TERRITORY OPERATING COMPANY, J. Kenneth Dixon and Gladys Dixon, husband and wife, Leslie Stinson and Maurine F. Stinson, husband and wife, Gwendolyn S. Cooper, Claride W. Walters, Leland D. Barby, Trustee, SMN Venture, a partnership, Carrie Carpenter and Margaret S. Keeney, Plaintiffs,

v.

BRIDGER PETROLEUM CORPORATION,
Defendant.

No. CIV-79-0083-T.

United States District Court,
W. D. Oklahoma.

Sept. 3, 1980.

Donald R. Liles, Woodward, Okl., for plaintiffs.

William B. Rogers, R. Steven Haught of Ames, Daugherty, Black, Ashabranner, Rogers & Fowler, Oklahoma City, Okl., for defendant.

MEMORANDUM OPINION

RALPH G. THOMPSON, District Judge.

This suit for cancellation of an oil and gas lease commenced in state court on Decem-

ber 28, 1978, and was properly removed by defendant to federal court. A motion for certification of class was denied by the Court and plaintiffs subsequently amended to add additional parties plaintiff. Defendant has moved for summary judgment and plaintiffs have responded. The Court ordered defendant to reply to the issues raised in plaintiffs' response and this additional brief has been received.

Plaintiffs in their amended complaint seek a declaratory judgment that the oil and gas lease, held by defendant, has expired by its own terms, as gas produced from the well on the subject property is no longer produced in paying quantities. Defendant argues in its motion for summary judgment that plaintiffs are precluded by their actions from asserting that the lease has expired under the theories of estoppel, waiver, and/or bar. The facts as they are relevant to this issue are not in dispute and will be set out chronologically.

November or December, 1977: Plaintiffs allege that the well ceased to produce in paying quantities (plaintiffs' answers to interrogatories, no. 13, filed Feb. 5, 1980).

November 7, 1978: Plaintiffs, by letter of this date, made demand on defendant to drill an additional well to the Council Grove formation to protect this formation from drainage from neighboring properties. Plaintiffs informed defendant that if no well was commenced within thirty days, cancellation of the lease would be sought. (Defendant's motion for summary judgment ex. A) (The record reflects and plaintiffs' counsel admits, that all plaintiffs or their representatives joined the demand letter. Aff. of Donald R. Liles in response to defendant's motion.)

November 8, 1978: Plaintiffs filed suit in state court seeking cancellation of the lease and damages, for failure to protect from drainage. (Defendant's motion, ex. D)

November 10, 1978: Plaintiff's demand letter was received by defendant. (Defendant's motion, ex. B)

November 13, 1978: Defendant wrote to plaintiffs' counsel, informing him that a well to the Council Grove formation would be commenced within thirty days. (Defendant's motion, ex. C)

December 1, 1978: Defendant obtained a drilling permit for the new well. (Defendant's motion, ex. H)

December 6, 1978: Defendant spudded the new well. (Defendant's motion, ex. H)

December 15, 1978: Defendant answered plaintiff's complaint in federal court. (Defendant's motion, ex. E)

December 19, 1978: Plaintiffs' counsel, by letter to defendant's counsel, referred to the well recently commenced, and stated in part:

"Under all the circumstances involved, we feel it beneficial at this time to simply dismiss this action pending evaluation of the results of the drilling operations presently going on. Evaluation over a period of time of any well which is brought in will determine whether or not any action for drainage would lie." (Defendant's motion, ex. G)

December 20, 1978: The original case was dismissed without prejudice. (Defendant's motion, ex. F)

December 28, 1978: The instant case was filed, alleging the lease had terminated for failure to produce in paying quantities.

January 31, 1980: The new well was completed, which is now producing in paying quantities. (Defendant's motion, ex. H)

Based on these uncontroverted facts, defendant moves for summary judgment, arguing estoppel, waiver, and/or bar. The courts have long recognized that acts of the lessor may prevent him from claiming a termination or cancellation of an oil and gas lease against his lessee. *Eggleson v. McCasland*, 98 F.Supp. 693 (E.D.Okl.1951) (demand for further drilling, receipt of royalty payments); *Eagle Oil Co. v. Sinclair Prairie Oil Co.*, 24 F.Supp. 612 (N.D.Okl. 1938), aff'd 105 F.2d 710 (10th Cir. 1939) (accepting royalty payments, executing division orders); *Durkee v. Hazan*, 452 P.2d 803 (Okl.1968) (acquiescence in allegedly altered lease and acceptance of royalty payments); *Labbe v. Magnolia Petroleum Co.*,

350 S.W.2d 873 (Tex.Civ.App.1961) (recognizing validity of lease after lapse); *Anderson v. Talley*, 199 Okl. 491, 187 P.2d 206 (Okl.1947) (receipt of royalty payments with knowledge of breach); *Cadillac Oil & Gas Co. v. Harrison*, 196 Ky. 290, 244 S.W. 669 (1922) (acquiescence in good faith development after expiration of lease); *Scott v. Signal Oil Co.*, 35 Okl. 172, 128 P. 694 (1912) (acceptance of royalty payments from assignee, even though assignment was void.)

Here, in November, 1978, one year after the well is alleged to have ceased production in paying quantities, plaintiffs not only treated the lease as in full force and effect, they demanded further development to protect from drainage. Defendant immediately commenced a second well, which is currently producing. Plaintiffs did not merely acquiescence by their silence, they affirmatively demanded that a second well be drilled, and this conduct is more than enough, under the cases cited above, to estop them from now asserting that the lease expired.

Plaintiffs' sole argument in response to defendant's motion is that they had no knowledge that the well was not producing in paying quantities until after the demand letter of November 7, 1978. Plaintiffs assert that knowledge is an essential element of estoppel, and the principle therefore cannot be applied in this case. On December 19, 1978, as evidenced by letter of plaintiffs' counsel (ex. G), plaintiffs were treating the lease as in full force and effect, and acquiescing in further development. Nine days later, the instant suit was filed, alleging the lease had expired by its own terms. Resolving all inferences in favor of plaintiffs, the Court accepts as true, as stated in the affidavit of Donald Liles, attorney for plaintiffs, that plaintiffs obtained information after December 20 but before December 28, which indicated that a compressor was being used on the original well and that it was not producing in paying quantities. The issue thus presented is whether plaintiffs are prevented, by actions taken prior to obtaining knowledge, from asserting the lease had expired, under a theory of estoppel, waiver, or bar.

Equitable estoppel is the result of voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which he might otherwise have had, either of property, contract, or remedy, against another person who in good faith relied upon such conduct and was lead thereby to change his position to his detriment. *McDowell v. Cagle*, 205 Okl. 554, 240 P.2d 783 (1951); accord, *Poteau State Bank v. Denwalt*, 597 P.2d 756 (Okl.1979); *Apex Siding and Roofing Co. v. First Federal Savings and Loan Ass'n of Shawnee*, 301 P.2d 352 (Okl.1956). Estoppel has been defined to require knowledge of the relevant facts on the part of the party sought to be estopped. *Chisolm v. House*, 183 F.2d 698 (10th Cir. 1950); *Marshak v. Blyth Eastman Dillon & Co., Inc.*, 413 F.Supp. 377 (N.D.Okl.1975); *Gypsy Oil Co. v. Marsh*, 121 Okl. 135, 248 P. 329 (1926). Knowledge which is imputed to the party to be estopped constructively will support the defense of estoppel. *Fipps v. Stidham*, 174 Okl. 473, 50 P.2d 680 (1935). Moreover, the defense of estoppel is equitable, and courts have applied estoppel in many situations when one or more of the so called essential elements have been absent. 2 E. Kuntz, *Oil & Gas* § 26.14(c) (1964).

"Waiver" has been defined as the intentional relinquishment of a known right, or conduct which warrants an inference of such intent. *Prudential Fire Ins. Co. v. Trave–Taylor Co.*, 194 Okl. 394, 152 P.2d 273 (1944). The essence of waiver is an intent to relinquish certain rights; estoppel does not require intent, but the action of another in reliance upon the party to be estopped. *Bay Petroleum Corp. v. May*, 264 P.2d 734 (Okl.1953). The theories of waiver and estoppel are often interrelated, e. g., a person may waive a right by conduct which indicates an intention to relinquish it or by such failure to insist upon it that the party is estopped to set it up against his adversary. *Scott v. Signal Oil Co.*, 35 Okl. 172, 128 P. 694 (1912). An example of the blurring of the theories of estoppel and waiver, and the reluctance of courts to elab-

orate on the distinction, may be found in *Eagle Oil Co. v. Sinclair Prairie Oil Co.*, 24 F.Supp. 612, 618 (N.D.Okl.1938), aff'd 105 F.2d 710 (10th Cir. 1938), where the court discussed the distinction between waiver and estoppel, and concluded, without further attempt at distinction, that "it is certain that either one or the other, or both, such barriers are presented by the facts and circumstances in evidence."

"Bar," asserted by defendant as a third equitable defense, is a term seldom unaccompanied by estoppel or waiver. It is not a defense separate from estoppel, but the effect of estoppel, i. e., a party is barred from asserting or denying a position as a result of estoppel. See 28 Am.Jur.2d Estoppel and Waiver, § 1 (1966).

There are many cases that apply the principles of estoppel or waiver by preventing a party from taking unfair advantage of his actions or of an opposing party, even though the technical requirements of estoppel or waiver are not found. For example, without articulating the reasons for the rulings, courts have held that a party may not claim a contractual relationship was created, take advantage of the benefits arising out of the relationship, then deny liability thereunder. *Hanover Fire Ins. Co. v. Isabel*, 129 F.2d 111 (10th Cir. 1942) (release); *Frayer v. Crain*, 196 Okl. 172, 163 P.2d 966 (1945) (mortgage); see also *Johnson v. Gibson*, 93 Okl. 194, 220 P. 47 (1923). Similarly, it has been held that a person may not withhold his claim awaiting the outcome of a doubtful enterprise and after the enterprise has resulted in financial success, assert his interest, especially where he has thus avoided the risks of the enterprise. *Alexander v. Phillips Petroleum Co.*, 130 F.2d 593 (10th Cir. 1942).

Any analysis of the equitable defenses raised by defendant is incomplete without reference to the remedy sought by plaintiffs. There is a strong policy in Oklahoma against forfeiture of estates, and due consideration must be given to compelling equitable circumstances. 23 O.S. 1971 § 2; *Stewart v. Amarada Hess Corp.*, 604 P.2d 854 (Okl.1979); *Doss Oil Royalty Co. v. Texas Co.*, 192 Okl. 359, 137 P.2d 934 (1943).

■ With these principles in mind, the Court turns to the facts of this case to determine the merits of defendant's equitable defenses. Plaintiffs argue that because they had no knowledge of the use of a compressor on the well until after the demand for further development, the demand cannot estop them from seeking cancellation for failure to produce in paying quantities, as the essential element of knowledge is absent. Plaintiffs had knowledge of the amount of royalty checks they were receiving, and indeed, knew that the well was a "poor producer." (Aff. of Donald R. Liles in response to defendant's motion.) They had sufficient knowledge to place upon them a duty to inquire further with respect to whether the well was producing in paying quantities before affirmatively treating the lease as in full force and demanding further development. In this respect, therefore, the Court holds that plaintiffs had constructive knowledge sufficient to estop them from later claiming the lease had expired. The remaining elements of estoppel are present and have not been contested by plaintiffs.

■ The existence of waiver depends upon intent, which is a question of fact. *Thompson Drilling Co. v. Northern Ordnance*, 73 F.Supp. 1 (W.D.Okl.1947). However, the facts here are undisputed. Plaintiffs voluntarily demanded further development under the lease and from the undisputed facts, further development was their intention and desire. Obviously, further development of the lease is inconsistent with its cancellation. By so treating the lease as valid and in effect, and later acquiescing in the actual drilling of the second well, plaintiffs can be said to have waived any right to cancel the lease for failure to produce in paying quantities.

Finally, it would be inequitable to allow plaintiffs to treat the lease as effective, to demand further development as allowed by the lease, to sit by while an additional well was drilled, at their own insistence, and then to claim that the lease had expired one year previously. As stated in *Cadillac Oil &*

*Gas Co. v. Harrison*, 196 Ky. 290, 244 S.W. 669, 670 (1922):

"Let it be granted that the lease had expired before appellant entered on appellees' lands for the purpose of drilling wells and developing the property according to the terms of the lease, yet it cannot be denied that if such entry was made by appellant in good faith for development purposes, believing that appellees would not claim a forfeiture under the terms of the lease, and appellees knew of the entry, and either by silent acquiescence or by affirmative acts allowed or aided appellant in the sinking of the wells and development of the property for oil purposes at great expense, appellees will not now be heard to say that they did not consent to the development work by appellant, nor will they be allowed to claim or have a forfeiture of the lease, because to do so would be contrary to the fundamental principles of equitable estoppel. The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain possession inconsistent with one in which he had acquiesced or of which he has accepted any benefit."

See also *Davis v. Keeche Oil & Gas Co.*, 89 Okl. 226, 214 P. 711 (1923).

The Court therefore holds that under the principles of estoppel, waiver, and bar, plaintiffs may not be heard to claim forfeiture or cancellation of the lease here in question. Defendant's motion for summary judgment is granted and a judgment shall enter for defendant.