ANDERSON CO. v. WELWORTH AUTOMO-
TIVE CORPORATION.

No. 5249.

District Court, E. D. New York.

Jan. 28, 1931.

Frederick S. Duncan, of New York City, for plaintiff.

Mock & Blum, of New York City, for defendant.

BYERS, District Judge.

Motion for a preliminary injunction restraining the defendant from making and selling windshield wiper blades which infringe the claims of plaintiff's patent No. 1,597,999, and from making and selling windshield wiper blades of the color and packed in cartons, wrappers, etc., simulating the plaintiff's product.

In April, 1929, the plaintiff began to make and sell automobile windshield wiper blades of the distinctive character hereinafter described, the metal part of which was green, and the rubber of the wiper blade itself was of red. The boxes in which the device reached the consumer presented a dark blue background as to the top, with distinctive lettering in white; the reverse side of the box, and both vertical sides were white, containing appropriate statements concerning the device, printed in dark blue letters. At the right end on the top, a one-inch space was white, containing blue letters. The plaintiff used on the top, at the left end, its trademark "Anco" in script in white letters.

The plaintiff's product was thus of an original, striking color combination, and was presented to distributors and to the consuming public in such a distinctive apparel as to be calculated to promptly establish its identity in the commercial sense. This was important to the plaintiff, because at that time the device was not protected by a patent; indeed the plaintiff soon learned that letters patent had been issued to Nilson and Prince in 1926, bearing the number 1,597,999, and the plaintiff believed its device infringed that patent, and acquired the same for a valuable consideration on November 9, 1929, and now is the owner thereof.

The defendant began the manufacture of a windshield wiper in January, 1930. Its assistant treasurer avers that the activity originated in an order from Motor Parts Corporation of Chicago, which went into bankruptcy in June, 1930.

Acceptance of the initial order, with specifications as to the color scheme of the device, the box in which it was to be marketed, the wrapper, etc., are all averred to have been "in good faith and without knowing of any patent infringement."

It will be noted that the affiant's ignorance is not stated to have embraced the color

scheme or advertising features above described.

The defendant's affidavit in opposition does not aver that the bankruptcy of the Chicago Motor Parts Corporation affected the defendant's continued activity, but it is said that, after receiving notice of infringement from plaintiff, received on or about June 1, 1930, "the defendant promptly changed its dies so as to produce the article which is annexed to this affidavit and identified as 'Defendant's Modified Device.'"

The changes will be discussed presently.

The claims of the plaintiff's patent are as follows: "In a windshield cleaner squeegee, the combination with a flexible wiper strip, of a rigid channeled back between the sides of which said strip is held and beyond which it projects, the edges of said sides adjacent to the bending line of said strip being arranged spaced apart and normally out of contact with said strip."

The description of the invention, as contained in the letters patent, clearly reveals that the essential improvement in the windshield wiper art, accomplished by the patentees, resides in such construction of the element which holds the strip (that is brought into contact with the glass of the windshield) that the said strip, when moved across the latter surface, readily inclines thereto without resistance from the holding member; this result is accomplished in part by the flaring sides of the latter. That is to say, the outward curve, on each side of the flexible strip, engages the strip when operated, at its line of flexibility, in such a way as not to cut the rubber strip; this method retards disintegration, at the same time affording support to the strip as required.

It is true that the patent has not been adjudicated, nor is it the present purpose to undertake that task, but that does not help the defendant. See Mathieu v. Mitchell Vance Co. (C. C. A.) 7 F.(2d) 837, 838: " ⁚ * * Nor have we overlooked the fact that the patent in suit is as yet unadjudicated. It is enough to note that for many years lack of adjudication has not prevented injunction pendente lite in a proper case, and we think this is such a case."

█ The presumption that attaches to the action of the Patent Office is entitled to great weight in the present instance, because of the meticulous care that the defendant has exercised to copy the plaintiff's device in all respects, and its wrappings, container and advertising matter in *nearly* all respects.

Three of the patents cited by the defendant (Rockman, No. 1,403,710, Green, 1,397,- 611, and Lomano, 1,370,463) are stated, in the affidavit of Tower filed on behalf of the motion, to have been cited by the Patent Office according to the file wrapper in the Nilson and Prince application; which is deemed a sufficient answer to defendant's reliance upon them, for present purposes.

The British patent to Thornton, No. 2,794 of 1901, also relied upon by the defendant, and not cited by the Patent Office in the Nilson and Prince application, is different in all essential respects. In the first place, it is not for a windshield squeegee, but for "a rubber floor brush or squeegee" in which a wedge of rubber "is forced into a hollow metal back B, that is to say the back is formed of a strip of metal which is bent so that it is of a dove-tail shape in section, as shown in the end view Fig. 2, the rubber being moulded into a corresponding shape so that it is firmly wedged within the metal back; thus no screws or other means of retaining the rubber are required and there is no wood to deteriorate through wet."

The drawing shows the metal back to have flaring edges, but the office of these is stated in the provisional specification thus: "I bend a piece of metal of suitable thickness in the shape of a frustum of a cone with the narrow end open, the rubber I have moulded in a similar shape, so that it may be pressed into the metal and so firmly fixed without the use of screws."

What Thornton invented was a floor-cleaning implement in which flexibility of the contact element was neither promoted nor protected by the holding element, and indeed would tend to disappear as the narrow end of the rubber wedge wears away. What Nilson and Prince invented was a windshield wiper, necessarily of delicate and accurate properties, in which the operating factor gains much of its efficacy from the quality of flexibility at the line of manipulation, contributed to and promoted by the flaring sides of the holding member.

█ For the purposes of this motion, the defendant cannot be held successfully to have attacked the plaintiff's patent.

The respects in which the defendant has copied the plaintiff's product and its commercial apparel are so numerous as to exclude the possibility of inadvertence.

As to the wiper blade itself, the duplication is precise in both color and configuration. The plaintiff selected red rubber; so

did the defendant, although many if not most devices of the kind are of gray rubber.

The plaintiff's design of this member is unique and of the greatest importance to the proper accomplishment of the object of the device. Its cross-section presents a triangle (the contact element) supported by an elongated base, narrower than the triangle, having a circular termination (which anchors the part in the metal holder); the diameter of the circle being greater than the width of the connecting part of these two elements. The triangular portion of the blade is ribbed or grooved, five ribs or grooves to each side opposite the base, so that five separate edges are brought into contact with the windshield as the blade is drawn across it, or makes the "swish" which is the action removing water or moisture from the windshield, when the device is in motion.

That construction is novel to the plaintiff's device, and has been copied by the defendant with precision. It is not believed that a court of equity is impotent to protect the plaintiff in its priority of use of so ingenious and distinctive an element of its structure, even though it be deprecated by defendant as "functional." See Wesson v. Galef (D. C.) 286 F. 621, at page 623.

The metal holder of the rubber blade, with flaring edges as first used by the plaintiff, is unmistakably and obviously green. The defendant's metal holder has flaring edges; with the entire spectrum as a basis for selection, the defendant chose the identical color for its metal holder. The plaintiff's color scheme was unique when adopted, and remained so until defendant copied it.

The box in which the device is marketed by plaintiff has been described. The defendant copied it with only occasional and slight variations, which would entirely elude the inspection of one who had not been apprised of the simulation. True, the defendant calls its device "Champion," while the plaintiff's is called "Anco," and there are unimportant differences in the phraseology appearing on the two boxes, but the same general picture is presented to the eye, and, unless the two boxes are placed side by side, the differences are difficult of detection.

About the only thing which the defendant neglected to reproduce is the plaintiff's name. The defendant, for reasons which can only be conjectured, placed its product on the market anonymously, so far as the box and the interior wrapper are concerned, and, of course, at a lower price to the jobbing and distributing trade, than is charged by the plaintiff. This caused customers of the latter to accuse it of putting out a cheaper article to compete with its own first-marketed commodity, to meet the requirements of cut price merchandising.

The inner wrapper of the plaintiff's device is an instruction sheet. The defendant has availed itself of the same practice, copying plaintiff's cut, and using reading matter spaced and printed so as to closely simulate plaintiff's wrapper, using different colored paper, however.

■ The general effect of defendant's methods is so clearly the appropriation of plaintiff's prior established identity of product as to proclaim an entire absence of good faith and fair competition on the part of defendant.

Since the inception of the litigation, defendant asserts that it has changed its color scheme by flattening the edges of its metal holder and coloring that member black, and by changing the predominant color scheme of its box from blue to red.

Perhaps it has, but its prior history is not such as to create confidence in its continuing good faith.

The damage suffered by plaintiff from the unfair competition of the defendant meets all the requirements of prima facie showing, according to the moving papers, and the allegations in this respect are not contested by the defendant.

■ It is urged that the defendant's unfair competition cannot be temporarily enjoined, because there is no allegation in the bill that the jurisdictional amount is involved. Any deficiency in that respect will be taken care of by providing for an amendment to the bill, if one is required, by the order to be entered hereon. 28 USCA § 777; Equity Rule 19 (28 USCA § 723); American Steel & Wire Co. v. Wire Drawers', etc., Unions (C. C.) 90 F. 598.

The plaintiff may have a temporary injunction, enjoining the defendant from making, selling, etc., a windshield wiper which infringes its patent No. 1,597,999, or one having a green metal holder and a red rubber wiper blade, or one having plaintiff's triangular head with ten edges, ribs, grooves, or wiping edges; from using, in connection with any wiper blades made or sold by it, cartons, boxes, or other containers of the color scheme and the arrangement employed by plaintiff, or in simulation thereof or close resemblance thereto, or any arrangement or grouping which presents an appearance de-

ceptively similar to that used by the plaintiff; from using wrappers, folders or instruction sheets constituting wrappers which contain devices, reading matter, characters or representations of any kind deceptively similar to those employed by the plaintiff.

The amount of the bond required of the plaintiff and the terms of the order to be entered hereon are to be settled on three days' notice.