PROTECTIVE CLOSURES CO., Inc., a corporation, Joseph R. Grenier, an individual, and Ernest W. Dormeyer, Jr., an individual, Plaintiffs,

v.

CLOVER INDUSTRIES, Inc., a corporation, Defendant.

Civ. A. No. 5432.

United States District Court,
W. D. New York.

Sept. 3, 1954.

See, also, 112 F.Supp. 342.

Popp & Sommer, Buffalo, N. Y., for plaintiffs.

John S. Powers, Buffalo, N. Y., for defendant.

KNIGHT, Chief Judge.

The complaint herein charges patent infringement. The answer denies validity, and to it is added a counter-claim for a declaratory judgment of invalidity. A supplemental complaint charges unfair competition. In its answer, defendant denies acts of unfair competition and alleges that the supplemental complaint fails to state a good cause of action.

The plaintiffs are Joseph R. Grenier and Ernest W. Dormeyer, Jr., joint patentees, and Protective Closures Company, Inc., claimed to be a licensee. The defendant is Clover Industries, Inc.

The patent in suit is No. 2,580,-762. The application was filed on April 28, 1950, and the patent issued January 1, 1952. Defendant admits that its closures "respond to the literalism of claim 1 of the patent." Thus the sole issue is as to validity. The issue of unfair competition can only arise if the patent is held to be valid. Defendant's denial of infringement is based on the proposition that there can be no infringement of an invalid patent.

The alleged invention relates to a closure used industrially, either as a cap or a plug, made of a plastic material and having such a shape that the closure when so used will fit and effectively close a range of sizes of parts, such as the ends of tubing or the like. It primarily is used as a temporary closure for

dust and moisture seals, shipping protectors for pipes and tubing ends and to mask parts for paint spraying or electroplating.

The application for the patent as originally filed contained 8 claims, and all of these, except claims 6 and 8, were rejected by the patent examiner. Thereupon Claim 4 was amended and designated Claim 1, as amended, the patent was issued. The amendment added the last clause to old Claim 4 which read "and an integral annular bead projecting radially inwardly from said side wall closely adjacent the rim thereof."

The entire Claim 1 reads:

"1. As an article of manufacture, a closure comprising in its unmounted condition a single polyethylene body having a circular end wall of substantially uniform wall thickness, an enlarging frusto-conical side wall projecting axially from the margin of said end wall, said side wall being of substantially uniform thickness of from .025 to .040 inch for at least the greater part of its distance from said end wall and the angularity of said side wall relative to the axis thereof being from 2.5° to 7.5° and the axial length of said side wall being such that the internal diameter at the rim thereof is from 7/16 to 3/16 inch greater than the internal diameter thereof across said end wall and forming inner and outer parallel frusto-conical working faces adapted to engage securely, respectively, with male and female generally cylindrical parts, an annular flange of substantially the same wall thickness as said side wall projecting radially outwardly from the rim of said side wall and an integral annular bead projecting radially inwardly from said side wall closely adjacent the rim thereof."

It is the claim of the plaintiffs that all of the structural features are critical to the provisions of a closure which will have the advantages of the desirable characteristics of the patented closure. The closures are made of polyethylene, claimed to be essential as a material tough and flexible, that does not tend to bond to an engaged surface and maintains these characteristics at high and low temperature. The frusto-conical side-wall is stated to be between .025 to .040 of an inch in thickness with an angularity of 2.5° to 7.5° and of such height that the diameter at the rim will be 7/16 to 3/16 inch greater than the internal diameter across the end wall; the external flange or rim limits the inward motion of the closure when the closure is used as a plug.

It is claimed that a greater thickness of the frusto-conical side wall would not permit the closure as a plug to be forced into a range of openings with the rim of the closure flush with the holes, and as caps the closure could not be bottomed on the ends of a range of male parts; that the cap or plug, as a partial mounting, would be more apt to be knocked off in handling; that any decreased thickness of the side-wall would render it likely to wrinkle axially and a too thin wall would render the wall less in stability and make it more difficult to apply and remove.

It is asserted that a taper in the side wall is essential as rendering the closure more adaptable to fit wider ranges of sizes of parts. As to the external annular flange, it is said that this is essential because, when the closure is used as a plug, this flange limits inward movement, and that when the closure is used as a cap it is helpful in holding the closure. The claim for the internal annular bead, which is adjacent to the rim, is that it is essential in that it insures an adequate seal with the "largest size of cylindrical projection which the cap is designed to accommodate", and the other being that it greatly facilitates the molding of the closure.

The plaintiffs claim that Claim 1 is a combination claim and that its validity

does not depend upon novelty of any or all of its elements individually but rather upon the novelty of the combination. The defendant, however, asserts that the file wrapper shows a definite and binding disclaimer of subject matter originally sought to be included in the claims of the patent. It will be remembered that a number of the claims in the file wrapper were disallowed by the examiner and no appeal was taken by the plaintiffs. The claims disallowed are included as a part of the combination in the suit patent. The question of the effect of any disallowance should be passed upon at this point, because of its possible effect upon the question of validity of the patent in suit.

The defendant cites a number of cases in which the effect of a disclaimer is discussed. The substance of these holdings is that plaintiffs here abandon any claim theretofore made not claimed in Claim 1 in suit. Texas Co. v. Anderson-Prichard Refining Corp., 10 Cir., 122 F.2d 829. The answer is found in a number of decisions of the Courts.

In International Cellucotton Products Co. v. Sterilek Co., 94 F.2d 10, 12, the Court, speaking through Judge Learned Hand, said, in part:

"When an inventor consents to limit his monopoly, there is no reason in fact to impute to him the belief that his only patentable advance lies in the element so introduced. * * * Nor is there any reason to impose upon him the same consequence as though he had formally so conceded; it is enough that he has freed the art except as the claim reads, and that he has surrendered any power under the doctrine of equivalents to resume what he has given up. He has done nothing which need prevent him from insisting in support of the claim as allowed that his invention was broader than the examiner supposed; he is not confined to the examiner's reasoning or committed to his mental processes."

That was a suit for infringement of a patent. While the application was pending, the examiner cited a reference against the claims and to escape this the applicant amended his claim and made some change in the machine. Defendant urged that by so limiting his claims, the applicant had conceded that the prior art anticipated his claims with the sole exception of this interpolated feature.

In Texas Co. v. Globe Oil & Refining Co., 112 F.Supp. 455, in the prosecution of the patent the claims had been amended and the same contention was there made as is here contended. The defendant contended that the validity of the claims must be wholly judged by the element added by amendment following rejection of certain claims. The Court at considerable length quotes and discusses several cases, and in conclusion it said, 112 F.Supp. at page 479: "In my opinion, the law should not and does not, require that the novelty of Behimer's invention be judged on the basis alone of the added element of the pump."

■ Accordingly it is held that the closure defined in Claim 1 of the patent in suit, except for the element of the internal bead, is not part of the prior art effective as against the claim as finally allowed.

Claim 4 in the original application was rejected in the Patent Office as unpatentable over Morrell No. 2,285,220; Eckart No. 755,119; Unke No. 1,853,945; Kouperman No. 583,970 (a French patent); and Tupper No. 2,487,400. In none of these patents is there any teaching of several of the features which are essential to a closure capable of use both as a sealing cap and as a sealing plug and which will fit a range of pipe of various sizes.

Morrell says: "This invention relates to improvements in receptacles or containers or processes of making the same" and refers particularly to receptacles, containers or cans for packaging solids.

Eckart is said to relate to improvements in cans or receptacles for fruit and that the object is "to improve upon the means for closing the can."

Unke is said to relate "to devices for protecting the threads of pipes and other threaded products during handling and shipment." This patent describes a device quite different from that of the patent in suit. The so-called "protector" is forced over the threads of the pipe and screwed on.

Tupper No. 2,487,400 shows an open mouth container, and a snap-on and off type of closure. None of these patents shows engaging frusto-conical side wall projecting axially from the margin of the end wall, a side wall of substantially uni-from thickness of .025 to .040 inch or the angularity of side wall to the axis of from 2.5° to 7.5° nor the axial length of the side wall as being 1/16 to 3/16 inch greater than the internal diameter thereof across said end wall nor inner and outer parallel frusto-conical working faces adapted to engage with male and female generally cylindrical parts.

Defendant has submitted altogether 25 patents as showing anticipatory prior art. These include 16 considered in the Patent Office; 9 alleged prior uses and 4 prior printed publications. No one of such discloses all the limitations called for by Claim 1, or others of such 9 patents are too remote to justify description. One shows a simple rubber cylindrical cap for a bottle; one a method and apparatus for molding internal threaded plastic caps; one a machine for making buttons; one showing a mold for folding articles for annular shape; one for molding a nose for a projectile; one a machine for unscrewing internal threaded caps from the male dies; and one for a bottle stopper made of polyethylene.

The defendant places some emphasis on Sampson No. 1,430,685; Backhaus No. 601,698; Simmons No. 1,583,019; Bellows No. 1,863,081; Damsel No. 1,934,-681. An examination of each of these patents will clearly show that none contains the combination of elements shown in Claim 1. Mainly these describe closures or devices for the improvement of caps on bottles. None contain a description of a device comparable to the structural device of Claim 1. Any reference to any "bead" does not refer to any type similar to that shown in Claim 1, and it does not appear that the alleged closure is usable as a plug.

Kramer Patent No. 1,710,363, issued April 23, 1929, cited by defendant, shows no bead or claim to one. Therein it is stated: "My invention relates to plugs, caps or the like for automobile radiators, and the like, and aims to devise means of the general character specified, which are simple in construction, easy and convenient to fabricate and which are very convenient in use."

The Kramer closure is made of rubber. No significance is attached to this. It is usable as a cap or a plug. It shows a circular end wall, tapering side walls from the top down. The shoulder shown has no use comparable with the inner annular bead in the patent in suit. None of these patents shows or claims an inner annular bead.

It is claimed that the prior art discloses polyethylene closures having the bead of Claim 1, and, in support of this, defendant presents Benner No. 2,586,775; Detzel No. 2,573,552, filed October 10, 1949; "Kitchen Kap" closure and the Lumilite closures. It is claimed that the threaded portion in Benner will act as does the internal annular bead in the patent in suit with respect to the molding operation. Assuming this, the patent does not anticipate. The internal surface and main external surface are evidently cylindrical. The bead serves another purpose and that is in holding the closure in place. It is evident that this device cannot be used as a cap and as a plug. The filing date of Detzel is later than that assigned to the alleged invention in suit, but *aliunde*, defendant has offered proof of its earlier sale. It is claimed that this Detzel device shows a

bead acting as an undercut in the molding process and that this bead acts in pulling the molded product from the female die. This Detzel is for a bottle stopper as usually used in carbonated beverages. It shows a stepped cylindrical form, with the interior conforming to stepped cylindrical form of the top of the bottle. The side is not tapered and there is no integral annular external flange. Many other prior patents were cited by defendant in its answer and in its brief herein. Many of these are said to relate to the patent claims dismissed.

It is defendant's claim that other structures anticipate, and that these are the Coty closure; the Foster-Milburn vial and the closure of the Kramer patent. The Coty closure was used only as a plug, but this device shows a rounded bead projecting inwardly and being about half way inside of the closure. This would apparently act in the same way as the patent, the integral annular bead to interlock with the undercut in the male die to remove the molded product from the die. The bead in Coty engages the outer surface of the part on which the closure is fitted. It is not made so that it performs any function as located.

There is confusion in the evidence with respect to the structure and purpose of the Foster-Milburn medicine vial and my examination leads to the conclusion that plaintiffs' patent did not come from its teaching.

With respect to the Coty bottle stopper, made by Lumelite Corporation, there is likewise confusion as to its structure and its birth. Nor does it anticipate plaintiffs' claim. If there was even a remote anticipation, it was abandoned by defendant when the application for a patent very similar to that of plaintiffs was denied to defendant's president, Harold P. Henderson, and he abandoned his application. Thereafter defendant deliberately copied plaintiffs' patent which had been granted pursuant to plaintiffs' application filed several months prior to the Henderson application. Refractolite

Corporation v. Prismo Holding Corp., 2 Cir., 117 F.2d 806; Ric-Wil Co. v. E. B. Kaiser Co., 7 Cir., 179 F.2d 401; Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 39 F.2d 769; Electric Vacuum Cleaner Co. v. P. A. Geier Co., 6 Cir., 118 F.2d 221; Forestek Plating & Mfg. Co. v. Knapp-Monarch Co., 6 Cir., 106 F. 2d 554.

It is claimed that polyethylene is a comparatively new molding material, having come into use for that purpose a decade ago, and its use in industry as such was soon apparent. It adapted itself readily to use in the making of closures, especially to caps for bottles, cosmetic cases and the like. Plaintiffs disclose within the body of their cap a single, what they term "integral annular bead projecting radially inwardly". In the molding process we have a male and female die and these are separated on the completion of the process. This bead is often referred to as the undercut and is molded in the form of an annular groove in the male die and as molded the bead interlocks in the undercut and upon the separation of the dies it removes the molded product from the female. In the prior art there are a number of patents which disclose threads, one or more, which presumably would act the same in the mold as the bead in Claim 1. It is a common thing that caps are screwed on bottles, and the screw threads in these, if any, would act as designed for the bead in the claim patent. The purpose of these undercuts is well known and has been thoroughly described in general publications, prior to 1948. What applies to plastic molding applies to polyethylene—the process is the same and the bead or thread acts the same and to the same purpose. These closures disclose, though they do not claim, parts which act as undercuts and serve the purpose. That purpose is to aid the separation of the molded product by the male die from the female die. Attention is directed especially to Scribner No. 1,916,692.

The four prior publications to which defendant has alluded, (1) Thayer book, and (2) DuBois and Pribble book both of which have general reference to manufacture and (3) DuPont Plastics Bulletin, vol. 8, 1946, and (4) Modern Plastics vol. 25, No. 6, Feb., 1948, "Precocious Plastic", relating to polyethylene (called "Polythene" by DuPont) its remarkable properties and its availability in colors. None of the published articles anticipate or bear upon the patentability of the Claim here.

Certainly the Examiner considered the old claims which had been rejected of patentable significance when the annular inwardly projecting bead was included.

It is believed that this Patent No. 2,-580,762 is valid. Among the reasons for this conclusion are these:

■ (1) A heavy burden rests on one assailing a patent to show invalidity. 35 U.S.C. § 282, 66 Stat. 792, 812. "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it." And see Radio Corp. of America v. Radio Engineering Lab., Inc., 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163.

(2) Defendant slavishly copied the patent. Anderson Co. v. Welworth Automotive Corp., 2 Cir., 46 F.2d 696; Yale & Towne Mfg. Co. v. Alder, 2 Cir., 154 F. 37.

(3) Defendant's president filed an application for a patent on the same claims as the original application herein, asserting patentability. Town v. Willis, 85 F. Supp. 483, 487, affirmed 8 Cir., 182 F.2d 892, 895. The District Court stated:

"It would seem that defendant's position in denying that the device is patentable is further weakened by the fact that he filed an application for a patent on his own device—the accused device—which is practically identical in shape, material and construction, and which performs the same function in the same manner."

The Court of Appeals expressed its views in the following manner:

"Taking into consideration the presumption of validity which attends the grant of the patent, the age of the problem upon which Town was working, the reception which the patented device received from the public as evidenced by its commercial success, the conceded need for some such device, the inferences which may be drawn from the fact that the defendant imitated the device, Charles Peckat Mfg. Co. v. Jacobs, supra, at page 801 of 178 F.2d 794, and that he obviously regarded such a device as patentable (as is indicated by his application for a patent on the accused device, filed in December, 1944), we think that the findings of the District Court that the patent in suit was valid and that Claim 1 was infringed, were not 'clearly erroneous'."

(4) Nothing in the prior art shows a device or closure of such critical geometric proportions suitable for the purposes for which it is employed. Refractolite Corp. v. Prismo Holding Corp., 2 Cir., 117 F.2d 806.

[5] (5) Great commercial success, while standing alone, is insufficient to establish patentability, is a strong factor to be considered as indicating patentability. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 474, 55 S.Ct. 449, 79 L.Ed. 997; Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 181 F.2d 550, 564. Commercial success is stipulated.

(6) The many patents and devices shown in the prior art show failure to obtain results obtainable by this patent. Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 434–435, 31 S.Ct. 444, 55 L.Ed. 527.

(7) The structural features of the patent are essential and are not shown in combination as in the patent; the patent shows specific instructions with definite limitations.

(8) While the patent device seems a simple one, no other patent and nothing in the prior art is shown to accomplish the same results as did this patent.

■ (9) Despite its simplicity others skilled in the art were unsuccessful in this field. As was said in Goodyear Tire and Rubber Co. v. Ray-O-Vac, Co., 321 U.S. 275, 279, 64 S.Ct. 593, 594, 88 L.Ed. 721:

> "Viewed after the event, the means Anthony adopted seem simple and such as should have been obvious to those who worked in the field, but this is not enough to negative invention. * * * Once the method was discovered it commended itself to the public as evidenced by marked commercial success. These factors were entitled to weight in determining whether the improvement amounted to invention and should, in a close case, tip the scales in favor of patentability."

(10) The patent is a narrow one, and the plaintiffs through the patent obtain only limited monopoly.

■ The defendant and all those controlled by it are permanently enjoined from any and all acts of unfair trade practices and unfair competition arising from its unlawful simulation of the corporate plaintiff's products.

Since no proof has been given as to the damages sustained by plaintiffs from defendant's unfair practices and unfair competition, the determination of liability will be fixed by the Court after a further hearing.

Attached hereto and made a part hereof, as exhibits 1 and 2, are prints of the closures of the patent in suit and of the application for a patent made by defendant's president.

Findings may be submitted to accord with this opinion.

Exhibit    1

Jan. 1, 1952          J. R. GRENIER ET AL          2,580,762
                      PROTECTIVE CLOSURE
                      Filed April 28, 1950

Exhibit 2

Fig. 1

Fig. 2

Fig. 3

Fig. 4

Fig. 5

Fig. 6

Fig. 7

Fig. 8

Fig. 9

Harold P. Henderson, Inventor

By Emil Tinbach

Attorney