PROTECTIVE CLOSURES CO., Inc., Joseph R. Grenier and Ernest W. Dormeyer, Jr., Appellants,

v.

CLOVER INDUSTRIES, INC., Appellee.

No. 66, Docket 31298.

United States Court of Appeals Second Circuit.

Argued Oct. 16, 1967.

Decided May 14, 1968.

**810**

Kenneth R. Sommer, Buffalo, N. Y. (Popp & Sommer, Buffalo, N. Y.), for appellants.

Eugene F. Buell, Pittsburgh, Pa., (Conrad Christel, Christel & Bean, Buffalo, N. Y.; Arland T. Stein, Blenko, Leonard & Buell, Pittsburgh, Pa., of counsel), for appellee.

Before WATERMAN, MOORE and HAYS, Circuit Judges.

MOORE, Circuit Judge:

Appellant, Protective Closures Company, and appellee Clover Industries, are both manufacturers of polyethylene closures—caps or plugs primarily used to seal the ends of pipes or tubing to protect against dust or moisture. In 1954, the late Chief Judge John Knight rendered a judgment finding Clover Industries guilty of patent infringement and unfair competition. Protective Closures Co., Inc. v. Clover Industries, Inc., 129 F. Supp. 941 (W.D.N.Y.1954). Based upon the finding of unfair competition, Judge Knight enjoined Clover Industries from "any and all acts of unfair trade practices and unfair competition arising from its unlawful simulation of the corporate plaintiff's products." 129 F.Supp. at 947. The portion of the injunctive provisions relating to unfair competition precluded appellee from, among other things, (1) using the color red in manufacturing its closures, (2) using certain part number designations and sizes for plastic closures of cup-shaped configuration, and (3) representing in advertising or other written or printed literature an illustration of a polyethylene closure in which the dimensions are indicated by alphabetical letters together with data concerning the same tabulated in columns captioned with such letters. These were, respectively, paragraphs numbered 6, 7, and 8 of the judgment.[1]

1. "6. That defendant, its agents, servants, employees, and attorneys and all persons in active concert and participation with it be and they hereby are permanently enjoined and restrained from making, selling, advertising or otherwise representing or offering to the trade, a closure comprising in its unmounted condition a single polyethylene body having a circular end wall, an enlarging substantially frusto-conical side wall projecting axially from the margin of said end wall with the thickness of said side wall being about 1/32 inch and said side wall having an angularity relative to the axis of the closure of about 5° and further having an axial length such that the internal diameter at the rim of said side wall is between 1/16 and 3/16 inch greater than the internal diameter of the closure across its said end wall, and an annular flange having a thickness of about 1/32 inch projecting radially outwardly from said rim, where such closure

The judgment was entered on October 11, 1954; a motion to vacate the judgment was denied on November 5, 1954. On November 5, 1954, the court appointed a Special Master "to ascertain the profits or gains made by the defendant" and any additional damages sustained from unfair trade practices and unfair competition. By order dated December 1, 1954, the Special Master directed appellee to produce on December 14, 1954, all of its books, records and contracts pertaining to the infringement and unfair competition. On December 2, 1954, appellee filed its notice of appeal from the judgment. The Special Master held hearings on December 14, 1954, and January 21, 1955.

Faced with the pending proceedings before the Special Master and the appeal from the judgment, under date of February 25, 1955, the appellant and the appellee entered into an agreement in writing under which they agreed:

1. To dismiss the appeal;

2. To terminate and dismiss the accounting proceeding;

3. That appellee should make certain payments to the appellant;

4. That such payments were to be secured by a chattel mortgage executed by appellee;

5. That appellee should have the right to manufacture and sell a plastic closure as exemplified by a specified specimen "provided, however, that paragraphs numbered 6, 7 and 8 of said Judgment, a conformed copy of which is attached hereto and marked Exhibit 2, shall apply to any and all closures of the type exemplified by said Exhibit 1."; [2] and

---

is either colored red or does not bear a discernible trademark identifying the defendant as the source of such closure.

"7. That defendant, its agents, servants, employees, and attorneys and all persons in active concert and participation with it be and they hereby are permanently enjoined and restrained from making, selling, advertising or otherwise representing or offering to the trade, any plastic closures of cup shaped configuration as having the part numbers, or any of them, listed hereinafter in the left hand column for a nominal size listed hereinafter in the right hand column opposite the respective part number, said nominal size being the approximate internal diameter, expressed as a fraction of an inch or inches as the case may be, of such a cup shaped closure measured at the rim thereof, and irrespective of whether said part numbers, or any of them, have a prefix or suffix of any nature whatsoever:

| Part Number | Nominal Size |
| --- | --- |
| 00 | 1/8 |
| 0 | 3/16 |
| 1 | 1/4 |
| 2 | 5/16 |
| 3 | 3/8 |
| 4 | 7/16 |
| 5 | 1/2 |
| 6 | 9/16 |
| 7 | 5/8 |
| 8 | 11/16 |
| 9 | 3/4 |

| Part Number | Nominal Size |
| --- | --- |
| 10 | 13/16 |
| 11 | 7/8 |
| 12 | 15/16 |
| 13 | 1 |
| 14 | 1 1/8 |
| 15 | 1 1/4 |
| 16 | 1 3/8 |
| 17 | 1 1/2 |

"8. That defendant, its agents, servants, employees and attorneys and all persons in active concert and participation with it be and they hereby are permanently enjoined and restrained from representing in advertising or other written or printed literature which is distributed to the trade, an illustration or illustrations of a polyethylene closure in which the dimensions thereof, or any of them, are indicated by alphabetical letters together with data concerning the same tabulated in columns captioned with such letters."

2. "5. CLOVER shall have the right to manufacture and sell a plastic closure having the construction exemplified by the specimen marked Exhibit 1 and forming a part of this agreement, in any range of sizes, provided, however, that paragraphs 6, 7 and 8 of said Judgment, a conformed copy of which is attached hereto and marked Exhibit 2, shall apply to any and all closures of the type exemplified by said Exhibit 1."

6. That the payments specified in paragraph 3 should cover all costs and damages to which appellant was entitled under the judgment.

The terms of the settlement agreement were carried out. The accounting proceeding was terminated and dismissed by written agreement, the Special Master paid pursuant to court order, and an order was entered dismissing the appeal, all under date of March 8, 1955.

Over ten and a half years later, November 9, 1965, appellee, by motion under Rule 60(b), Fed.R. Civ.Pro., sought to reopen the judgment for the purpose of reforming it and to relieve the appellee from certain portions thereof on the ground that "the judgment is contrary to presently existing law and cannot be justified in law in view of the decision of the Supreme Court of the United States in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225 [84 S.Ct. 784, 11 L.Ed 2d 661] and Compco Corporation v. Day-Brite Lighting, Inc., 376 U.S. 234 [84 S.Ct. 779, 11 L.Ed.2d 669], both decided March 9, 1964." Appellee argued that the judgment placed it "in a position of competitive disadvantage with respect to the industry" and that it denied appellee "the right to use the basic color on its products."

The appellant countered on December 2, 1965, with a cross-motion for an order adjudging the appellee in contempt for disobeying the judgment. On October 3, 1966, appellant made a contingent motion to enforce paragraph 5 of the settlement agreement and to enjoin the acts prohibited by paragraphs 6, 7, and 8 of the judgment incorporated therein by reference.

■ On September 12, 1966, the court below granted the appellee's motion and denied the appellant's cross-motion. The court assumed from the nature of the motion before it that it was "for relief from portions of a judgment which are alleged to be contrary to law and public policy." A fundamental error of fact is found in the court's assumption that pending the accounting and appeal "the dispute was settled between the parties by an agreement dated February 25, 1955, *and a judgment was entered incorporating the terms of that agreement*" (emphasis added). To the contrary, the judgment was entered on October 11, 1954. The judgment did not incorporate the terms of the settlement agreement of February 25, 1955. It was the settlement agreement which incorporated paragraphs 6, 7, and 8 of the judgment. In making their peace upon the settlement they restated their rights in a manner quite unrelated to the judgment except as the appellee agreed to be bound by these numbered paragraphs. For example, they determined the amount of damages rather than submit the question to the Special Master as required by paragraph 10 of the judgment. The injunctive provisions of paragraph 3 and the holding that appellants' acts constituted wilful and deliberate infringement and unfair trade, upon which the injunctive and damage provisions were based, were completely ignored in the agreement. The litigation had ended, the judgment for all practical purposes was no longer effective, and the agreement alone expressed the rights of the parties.

■ Compromise and settlement agreements are sometimes referred to as "superseding agreements." See Langlois v. Langlois, 5 A.D.2d 75, 78, 169 N.Y.S.2d 170, 173 (1957). By this it is meant that the valid compromise agreement is substituted for the antecedent claim or right and the rights and liabilities of the parties are now measured by the terms of the agreement. 15 Am. Jur.2d, Compromise and Settlement § 21. Where, as here, the agreement is entered into after the judgment has been rendered and embodies parts of that judgment, the judgment is extinguished.

"The effect of the compromise agreement was to extinguish the asserted causes of action and the decree and to fix the rights, titles, and interests of the respective parties in accordance with its provisions." Eagle Oil Co. v. Sinclair Prairie Oil Co., 105 F.2d 710, 713 (10th Cir. 1939).

In Dakota County v. Glidden, 113 U.S. 222, 5 S.Ct. 428, 28 L.Ed. 981 (1885), a judgment had been rendered on certain coupons for interest due on bonds issued by the county. By a new agreement, the county took up the bonds and the coupons on which the judgment was rendered and issued new bonds which were accepted by the plaintiff in satisfaction of the judgment. In refusing to allow the plaintiff thereafter to seek to reverse the judgment, the Supreme Court stated:

"A new agreement, on sufficient consideration, was made, by which the judgment itself, the coupons on which it was recovered, and the bonds of which these coupons were a part, were all surrendered and destroyed, and other bonds and other coupons were accepted in their place, payable at a more distant date and with a lower rate of interest, with the effect of extinguishing the judgment now sought to be reversed, so that the plaintiff in that judgment could not issue execution on it, though there is no supersedeas bond to secure its payment.

"It is a valid compromise and settlement of a much larger claim, but it includes this judgment necessarily. It *extinguishes* the cause of action in this case. If valid, it is a bar to any prosecution of the suit in the circuit court, though we should reverse this judgment on the record as it stands for errors which may be found in it. To examine these errors and reverse the judgment is a fruitless proceeding, because when the plaintiff has secured his object the relation of the parties is unchanged, and must stand or fall on the terms of the compromise." 113 U.S. at 225, 5 S.Ct. at 429.

We think that the same is true in the present case. There would seem to be no sound reason for differentiating between a settlement agreement entered into after a judgment containing an injunction order which extinguishes the injunction and a settlement which extinguished a prior judgment for damages (Dakota County v. Glidden, supra) or one where the agreement extinguished a prior judgment declaring title to land (Eagle Oil Co. v. Sinclair Prairie Oil Co., supra). It is true that damages are considered compensative of past harm and injunctions are preventative of future harm, but at the time the parties entered into this agreement they were negotiating with present obligations—to pay money and to refrain from acting—created by the judgment. Entering into the settlement satisfied those obligations to their mutual satisfaction. No one argues, and the record does not suggest, that the compromise and settlement agreement of February 25, 1955, is not valid. Consequently, we must reverse and remand with instructions that appellee's motion under Rule 60(b) to modify the judgment and appellant's cross-motion for contempt be dismissed and that appellant's contingent motion for enforcement of the settlement agreement be reconsidered in light of those dismissals and this opinion.

Taking this view of the case, it is unnecessary to pass upon the questions of the timeliness of the motion to modify or the applicability of the *Sears* or *Compco* decisions.

Judgment reversed; motion to reform and cross-motion for contempt dismissed, and cross-motion for enforcement of contract remanded.

WATERMAN, Circuit Judge (concurring in the result):

In view of the disposition below a likely issue lurking in this case was not reached there. Now that issue attains prominence in that we are not following the approach taken by the judge below.

I concur in the result my colleagues have reached here but point out that it is reached *ex cathedra,* the rationale of our result not having been suggested to us by counsel. It is fully within the scope of appellate review for us to interpret what the parties meant by the written instrument they executed even if evidence of what they intended is not in the appellate record. However, I feel

bound to state that in reaching our result we have done so in the belief that the language in paragraph 5 of the contract (footnote 2 of the majority opinion) is fairly interpretable, despite any guidance from the record, as substituting for the continuing vitality of a continuing injunction (modifiable by the court that issued it as circumstances might permit) a contractually arrived-at absolutely unmodifiable limitation.